McFARLAND *v.* PICO *et al.*

The presentment and demand of commercial paper having days of grace, must be made within reasonable hours on the last day of grace. For the purpose of fixing the liability of endorsers, the note or bill is payable on demand at any time within those hours.

What are reasonable hours, will depend on the question, whether or not the bill or note is payable at a bank, or place where, by the established usage of trade, business transactions are limited to certain stated hours.

If there are such stated hours, where the note or bill is payable, the presentment and demand must be made within those hours. But if there are no stated hours, and no place of payment is designated in the note or bill, the presentment and demand may be made either at the place of business or residence of the maker or acceptor.

If at his place of business, it must be within the usual business-hours of the city or town; if at his residence, then within those hours when the maker or acceptor may be presumed to be in a condition to attend to business.

Notice may be given to the endorser, or other parties entitled to notice, immediately after presentment to the maker or acceptor, and refusal by him to pay, although it is not necessary that notice should be given until the following day.

After due presentment and demand, the liability of the parties becomes fixed. If, however, the maker of the note chooses after this to seek out the holder, and pay his note, he can do so, and thus save himself from the liability to suit on the following day.

For the purpose of fixing the liability of an endorser, the note is payable on demand at any time, during reasonable hours, on the last day of grace; but, for the purpose of sustaining an action, the holder must wait until the following day, as the maker has the whole day to make payment.

A notarial certificate of presentment and demand, and of protest for non-payment of a promissory note, taken from the record of the notary, is admissible, and is *prima facie* evidence of the facts contained therein, in like manner as the original protest.

It is not necessary that the certificate should state the form of notice given; any notice is sufficient if it inform the party to whom it was given, either in express terms or by necessary implication, that the note has been duly presented at its maturity, and dishonored.

There is no necessity for protesting a promissory note; a demand for payment, and, upon neglect or refusal to pay, notice to the endorser, are all that is required.

APPEAL from the District Court of the First Judicial District, County of Los Angeles.

This is an action of *assumpsit* upon a promissory note executed

by Carpenter, as principal, and Pico, as surety.   On the last day of grace, during the afternoon, some hours previous to sunset, the note was presented by a notary public, at the request of the plaintiffs, to Carpenter, for payment, which was refused.   The note was then formally protested for non-payment, and "notice of protest" given the same afternoon to Pico, by letter, addressed to him at his residence, and there delivered to a person, in charge of the residence, of proper age and capacity—Pico being at the time absent.   The only proof of service of notice consisted of a certified copy of the entry of the notary in his official books.

It appeared on the trial, that there were no regular business-hours at Los Angeles, the place where the note in question was payable, and the defendant Pico contended that a demand made, and notice given, previous to sunset, were premature, and further, that the entry in the notary's books was inadmissible and insufficient.   The Court overruled the position of the defendant, and the plaintiff had judgment.   The appellant now assigns this ruling as error.   The appeal was taken by the defendant Pico.

*J. R. Scott* for Appellant.

It is submitted that no legal demand was ever made upon Carpenter.   The finding of the Court is that no regular hours of business existed in Los Angeles on the thirtieth day of December, 1856; hence Carpenter had all of that day in which to pay the note.   It has been decided by this Court, in the case of Wilcombe *v.* Dodge, 3 Cal. R., p. 260, where no banking-hours or regular business-hours are proved to exist, that all day means to the setting of the sun.   Toothacre *v.* Cornwall, 4 Cal. R., 28.

It has been further decided by this Court, in the case of Wilcombe *v.* Dodge, above cited, that the maker has all day of the last day of grace in which to pay his note; that is to say, if payable in banks where banking-hours exist, he must pay during banking-hours; if payable at a place where regular business-hours exist, before the close of business-hours; where no business-hours exist, then before sunset.   Therefore, it is evident, from the previous decisions of this Court, that Carpenter had until sunset to pay this note.   The demand was made upon Carpenter in the afternoon of the last day of grace, and before sunset.

It is submitted that this demand was premature.   The best test of this is: Would a suit have laid against Carpenter at the time the demand was made, or immediately thereafter, upon his refusal to pay?   Certainly not.   See cases above cited, where this Court held that a suit brought upon the last day of grace was premature, the party having all day in which to pay.   Such is the doctrine clearly established by this Court in the case above cited.

It would be a contradiction in terms to say that the plaintiff had a right to demand payment of the note of defendant Carpenter, when he, Carpenter, had a longer time in which to pay. He clearly had until sunset of the last day in which to pay his note, and a demand made previous to that time, might have as well been made one week as one hour previous, a demand in either case being equally premature and inoperative.

The next proposition submitted by appellants is, that there is no proof of the service upon Pico of sufficient notice of the non-payment. The plaintiffs offer in evidence a certified copy from the record of Kimball H. Dimmick, a notary public of Los Angeles county.

These certified copies from the record of the notary are all of the evidence given upon the trial, of the protest of the note for non-payment by Carpenter, and notice thereof to Pico.

Now, what does the copy of the certificate of the notary purport to be in this case? He merely certifies that he served notice of protest upon Pico by letter addressed to Pico, left with a person at his house, in charge thereof. No copy of the notice left purports to be given, neither are the contents thereof given, nor does the certificate state that the notice was signed by any person whatever.

It is submitted that this is not sufficient proof of notice; but the proof of the character of the notice given is requisite in all cases, in order that the Court may judge of the sufficiency thereof. Such is the doctrine of all the authorities upon this subject. Smith's Com. Law, p. 247; Bank of Alexandria v. Swan, 9 Peters, 33; Penschaw v. Macy, 9 Metcalf, 174; Gilbert v. Dennis, 3 Metcalf, 495; Mechanics' Bank v. Merchants' Bank, 6 Metcalf, 25; Story Prom. Notes, §§ 348, 301; Miles v. U. S. Bank, 11 Wheaton, 431; U. S. Bank v. Carneal, 2 Peters, 543; Ransan v. Mack, 2 Hill, 587, 593; Reidy v. Seixes, 2 Johns. Cases, 337; Chitty on Bills, 466, '7, '8, '9, and notes; 2 Greenl. Ev., § 186.

Let us for the moment examine our statute law upon this subject.

This transaction took place under the act concerning notaries public, passed April 30, 1853. Comp. Laws Cal., pp. 902, 903. Section four of said act gives notaries power to protest foreign bills of exchange for non-acceptance or non-payment.

Section five gives them power to protest inland bills of exchange and promissory notes. No authority is given in either of those sections for the notary to give notice of non-payment.

Section nine of said act makes the certificate of the notary *prima facie* evidence of his official character and the truth of the facts therein set forth.

Section ten declares that the original protest of a notary public, under his hand and official seal, of any bill of exchange, etc.,

McFarland v. Pico.

and the service of notice upon any or all of the parties to any such bill or note, shall be *prima facie* evidence of the facts contained therein—clearly meaning the original protest and the original notice. An exception is made to this rule in the last three lines of this section, which allows the certificate of the notary drawn from his records, stating the protest and the facts contained therein, to be evidence in like manner as the original protest.

Thus it clearly follows that the Legislature, by section ten, intended to exclude as evidence, a copy drawn from the record, of notice of non-payment, and only to admit the original notice. Said section, down to the third line from the bottom, speaks only of original protests and notices; hence it follows, from said section, that only the original notice of non-payment can be given in evidence; but that either the original or a copy of the protest, drawn from the record of the notary, may be used—clearly making a distinction between the protest and notice.

It is submitted that this decision of the Court below, if sustained, would go to establish a very dangerous doctrine; a doctrine unknown to the common law, and unauthorized by any legislative enactment of this State, being nothing more or less than making the notary a judicial officer, to judge of the sufficiency of the notice of protest, which, it is submitted, is entirely a question of law for the Court, upon an examination of the notice itself.

*McDougall & Sharp* for Respondents.

The demand, in this case, was made upon the maker, during the day-time of the last day of grace. This is said to be premature, and counsel cite Wilcombe *v.* Dodge, 3 Cal., 260; and Toothacre *v.* Cornwall, 4 Cal., 28. Without entering into a criticism of the opinions cited, respondents will endeavor to produce the rule, as it has been uniformly established by writers and Courts of authority. Story on Bills, § 469; Story's Prom. Notes, § 226.

The general answer to be given to such inquiry is, that it must be within reasonable hours during the day. If there be a known usage or custom of trade in the town or city, that will furnish the proper rule to govern the holder, for then the presentment must be within the hours limited by such custom or usage, or if there be no such custom or usage, then within the reasonable hours of transacting business. If the presentment is made at unseasonable hours, either too early or too late, at a bank or banker's, or at the counting-house, or at the dwelling-house of the maker, etc., the presentment will be a mere nullity, and without any legal effect.

Chitty on Bills, ch. 7, p. 303; Bayly on Bills, ch. 7, p. 224; Thompson on Bills, 420–424; Burridge *v.* Manner, 3 Camp., 193;

41

Moline, ex parte, 19 Vesey, 216; Bank of Alexandria *v.* Swan, 9 Peters, 33. See a collection of the modern cases, English and American, in the notes to Story on Prom. Notes, § 226.

About this position there is no conflict of authority, and about the reasonableness and soundness of the rule there is no room for argument.

The same authorities governing the last question, decide also the question of notice as to time; this is, however, unimportant, as the Court, upon sufficient testimony, found the notice given after sunset.

It is insisted, by appellants, that a certified copy of the entry of the notary, in his notarial-record, that he had served notice of protest on Pico, was inadmissible. It is not correct, as assumed, that the Court below held this entry as conclusive. It was held competent, and no testimony was introduced to rebut it; indeed, the entire testimony of defendant goes to establish the fact of notice, the controversy being over the question of time. The point made is a criticism of the provisions of the act concerning notaries. Comp. Laws, 902, 903.

In reply to this criticism, it is thought sufficient to call the attention of the Court to the clear and obvious intent and meaning of the act. The whole object of protest and notice is to charge the endorsers, and to make the certified copy of one-half of the record evidence, and the other half not, was certainly never contemplated, and is as certainly not the meaning of the law; and more than this, the testimony introduced by the defence is a substantial admission, sufficient to justify a Court or jury in finding the fact.

It is contended that there is no sufficient proof of the form of notice.

In reply, we say, no form of notice is required. It may be either verbal or written, and it is sufficient if it advise the party, with reasonable certainty, that the note had been dishonored. 2 Greenleaf, § 196, and cases cited; Mills *v.* Bank of U. S., 6 Cond., 376; Bank of Alexandria *v.* Swan, 9 Peters, 33; Edbert *v.* Dennis, 3 Metcalf, 500; Reedy *v.* Seixes, 2 Johnson's Cases, 337.

The question in this case was, whether or not there was evidence of notice to Pico, that the note was dishonored; and, upon the testimony before the Court, there could not have been any reasonable doubt; the time, in fact, being the only matter in dispute.

FIELD, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., and BURNETT, J., concurring.

In support of the position, that the demand and notice were premature, the defendant's counsel cites the case of Toothacre *v.* Cornwall, 4 Cal., 28. In the opinion delivered in that case,

the Court say, that when a note is payable in bank, notice of non-payment *may be* given to an endorser on the evening of the day on which the note is payable after the close of banking-hours; and when the note is not payable in bank, notice *may be* given on the evening of the day it is payable at the close of the usual hours of commercial business; and in places where there are no regular hours of business, the notice *may be* given after sunset. There is no doubt that notices *may be* given at the times mentioned, if presentment and demand have been made, but the inference from the language of the opinion is, that notices given at an earlier period of the day, would be premature; and this is what the Court intended to decide, for in that case, notice given at from four to four-and-a-half o'clock, P. M., of the day on which the note was payable, was held insufficient, not on the ground urged by counsel, that there had been no demand and refusal, but on the ground that the record did not disclose that the time was after the expiration of the usual hours of business, and the Court necessarily knew that in midsummer, the hour was far from sunset.

The rule thus laid down, would be conclusive of the present appeal, if that case were held binding upon us. We would not disregard a decision of this Court, deliberately made, unless satisfied that it was clearly erroneous. But the highest regard for the doctrine of *stare decisis* does not require its observance when a plain rule of law has been violated. The decision in Toothacre *v.* Cornwall is in direct conflict with the law, as to presentation and notice, as settled by all the authorities, both of England and the United States. And besides, the rule, as laid down in that case, is one of great inconvenience to holders of commercial paper, and of no possible benefit.

The general rule as to the presentment and demand of commercial paper having days of grace, is this: the presentment and demand must be made within reasonable hours during the last day of grace. For the purpose of fixing the liability of endorsers, the note or bill is payable on demand at any time during those hours. What are reasonable hours, will depend upon the question, whether or not the note or bill is payable at a place or bank, where, by the established usage of trade, business transactions are limited to certain stated hours. If there are such stated hours, where the note or bill is payable, the presentment and demand must be made *within those hours;* but if there are no stated hours, and no place of payment is designated in the note or bill, the presentment and demand may be made either at the place of business, or residence of the maker or acceptor; if at his place of business, it must be *within* the usual business-hours of the city or town; if at his residence, then, *within* those hours when the maker or acceptor may be presumed

to be in a condition to attend to business.    Story in his Treatise on Promissory Notes, section 226, says :

" Having thus ascertained the time when a promissory note becomes due, and payable, * * * let us now pass to the consideration of the time and mode in which payment is to be demanded on the day of the maturity of the note, and in the first place, within what hours of the day the presentment for payment is proper and allowable.    The general answer to be given to such an inquiry is, that it must be *within reasonable hours*, during the day * * *.    If there is a known custom or usage of trade in the town or city, that will furnish the proper rule to govern the holder, for then the presentment must be *within* the hours limited by such custom or usage * * *."

In Packor *v.* Gordon, 7 East, 385, an inland bill was accepted, payable at a banker's in London.    On its maturity, it was presented at the banker's, after the usual banking-hours, when the bank was closed, and it was held that the presentation was too late.    Lawrence, J., said : " But where a bill is accepted in this manner, it must be understood by all parties concerned that it is to be presented for payment at the banker's *within the usual hours of business ;* and not having been so presented in this case, there was no evidence of the dishonor of it in order to charge the drawer."    In Elford *v.* Teed, 1 Maule & Selwyn, 28, a similar decision was made, and Lord Ellenborough, C. J., said : " There was not any text-writer upon whose authority a presentment of a bill by a notary at a house of business after it was closed, could be sustained.    It is laid down in Marius, 2 Eldw., 187, that it must be made *during times of business*, at such reasonable hours as a man is bound to attend, by analogy to the *horæ juridicæ* of the Courts of Justice."

In Staples *v.* Franklin Bank, 1 Metcalf, 43, the note was presented and payment demanded before eleven o'clock in the forenoon of the last day of grace, and upon a refusal of payment, suit was immediately commenced, and the Court held that the maker of the note was bound to pay it *upon demand at any reasonable hour* of the last day of grace, and may be sued immediately after default.    The doctrine, so far as authorizing a suit on the last day of grace, is not uniform in the different States ; but on the point that a presentment and demand may be made at any reasonable hour on the last day of grace, there is no conflict of authorities.    In the case cited, Chief Justice Shaw says : " Indeed, the rule seems to be settled by all the authorities, English and American, that a demand must be made on the maker, or acceptor, *within reasonable hours* on the day of maturity, and when the bill, or note, is in bank, which has certain fixed and known hours for being open for business, those will be construed to be reasonable hours."

If the presentment be made at unreasonable hours, too early or

McFarland v. Pico.

too late, it will be insufficient and unavailing. In Barclay v. Bailey, 2 Campbell, 527, the presentment was made at the drawer's residence at eight in the evening, and it was argued that being so late it was insufficient to charge the drawer, but Lord Ellenborough said : "I think this presentment sufficient. A common trader is different from bankers, and has not any peculiar hours for paying or receiving money. If the presentment had been during the hours of rest, it would have been altogether unavailing, but eight in the evening cannot be considered an unreasonable hour for demanding payment at the house of a private merchant who has accepted a bill."

In Wilkins v. Jardis, 2 Barn. & Ald., 188, Lord Tenterden said : "As to bankers, it is established with reference to a well known rule of trade, that a presentment out of the hours of business is not sufficient; but in other cases the rule of law is, that the bill must be presented at a reasonable hour. A presentment at twelve o'clock at night, when a person has retired to rest, would be unreasonable; but I cannot say that a presentment between seven and eight in the evening is not a presentment at a reasonable time."

In Lunt v. Adams, 17 Maine, 230, the presentment was made and payment demanded at eight o'clock in the morning of the last day of grace, and they were held to have been made at an unreasonable hour. In Dana v. Sawyer, 22 Maine, 244, the presentment and demand were made a few minutes before twelve at night, after the maker had retired to rest, and they were also held to have been made at an unreasonable hour, and therefore insufficient and unavailing.

And notice may be given to the endorser, or other parties entitled to notice, immediately after presentment of the note or bill is made to the maker, and payment refused, although it is not necessary that such notice should be given until the following day. In Burbridge v. Manners, 3 Campbell, 103, the note was presented for payment in the forenoon of the day it became due, and, in the afternoon of the same day, the plaintiff caused notice of its dishonor to be sent to the defendant. It was urged, on the trial, that this notice was premature, that the maker of the note had the whole of the day it became due to pay it, and till the last minute of that day, it could not be considered as dishonored. But Lord Ellenborough said, "I think the note was dishonored as soon as the maker had refused payment on the day when it became due, and the notice sent to the defendant must have answered all the purposes for which notice in such cases is required. The holder of a bill or note gives notice of its dishonor in a reasonable time, the day after it is due ; but he may give such notice as soon as it has been dishonored the day it becomes due, and the other party cannot complain of the extraordinary diligence used to give him information." See Chitty

on Bills, 387 ; Moline, ex parte, 19 Vesey, 216 ; Corp *v.* McComb, 1 Johnson's Cases, 329 ; Bussard *v.* Levering, 6 Wheaton, 102 ; Lindenberger *v.* Beall, ib., 104; Farmers' Bank of Maryland *v.* Duvall, 7 Gill. and Johns., 79 ; Smith *v.* Little, 10 N. H., 526 ; Coleman *v.* Carpenter, 9 Barr, 178 ; King *v.* Holmes, 1 Jones, 457 ; Shed *v.* Brett, 1 Pick., 401.

In this last case, Chief Justice Parker says, "The principle adopted in England and in this commonwealth, in relation to negotiable securities, is, that after refusal to pay on demand, made on the day when the money is due according to the contract, the note or bill is dishonored, and notice may be immediately given to the drawer or endorser ; though it is not necessary it should be given until the day after, or, if the endorser is in another town, by the next mail after the day on which the demand is made. The earliest possible notice of the fact which renders the endorser liable, is the most advantageous to him, as the object of the notice is to enable him to secure himself."

But it is urged by the defendants' counsel that Carpenter had the entire day in which to pay the note, and, therefore, any demand previous to sunset was premature, and he cites Wilcombe *v.* Dodge, 3 Cal., 260. This case only decides that the maker of a note has the entire day on which it falls due, within which to pay it, and that a suit brought on the last day of grace is premature ; there is nothing in this decision in conflict with the views expressed in this opinion. For the purpose of fixing the liability of an endorser, or other party entitled to notice, the holder of a note must see that a due presentment and demand of payment are made of the maker, and notice thereof given to the endorser. When this is done, the liability of the parties become fixed. The holder can then remain passive. If, however, the maker chooses after this to seek out the holder and pay his note, he can do so, and thus save himself from the liability to suit on the following day. The rule is, that for the purpose of fixing the liabilities of an endorser, the note is payable, on demand, at any time during reasonable hours on the last day of grace ; but, for the purpose of sustaining an action, the holder must wait until the following day, as the maker has the whole day to make payment. In Osborn *v.* Moncare et al., 3 Wendell, 170, Mr. Justice Sunderland says : "Notice to the endorser, *on* the third day of grace, after a demand upon the maker, and his default of payment, is good, although it need not be given until the following day. It being earlier than is required, cannot form any objection on the part of the endorser. The demand upon the maker should be made on the third day of grace, and within a reasonable time before the expiration of the day, and if he then refuses payment, the holder has done all that is incumbent upon him to do, and may treat it as a dishonored bill, so far as immediately to give notice

to the endorser; but still I apprehend the maker has the whole day to pay it, if he thinks proper to seek the holder."

In *Coleman v. Carpenter*, 9 Barr, 179, Chief Justice Gilson says : " The contract of the acceptor is to pay on demand, and that it is broken if the bill be not paid the instant it is presented; from which it results that notice may be given the same day. True, an action cannot be brought till the next day, from the anomalous reason that the acceptor may pay after refusal, if he take the trouble to seek the holder. A better one would be, that as there are no fractions of a day but such as are made by statute, or the custom of merchants, the impetration of a writ is an act which covers the whole day."

The notarial certificate was admissible. Section four of the act concerning notaries public, passed in 1853, authorizes notaries public to demand acceptance of and payment of foreign bills, and to protest the same for non-acceptance or non-payment. Section five of the same act authorizes them to demand acceptance of inland bills, and payment thereof, and of promissory notes, and to protest the same for non-acceptance, or non-payment, as the case may require. Section seven requires them to keep a record of their official acts, with certain exceptions, specified in section six, and to give a certified copy of any record in his office, to any person, upon the payment of the fees thereof; and by section ten, the original protest, under the seal of the notary, stating the presentment of the bill, or note, for acceptance, or payment, and the non-acceptance, or non-payment, and the service of notice on any or all of the parties, to such bill or note, specifying the mode of giving such notice, and the reputed place of residence of the party to whom given, etc., is *prima facie* evidence of the facts contained therein; and a certificate of the notary, drawn from his record, stating the protest and the facts therein contained, is made evidence of those facts, in like manner as the original protest. It is evident that the tenth section contemplates an insertion in the protest of the notary, of the fact of service of notice, with specifications of mode, manner and place, and that both the original protest and a certificate from the record of the notary, shall be held equally admissible in evidence. The whole object of the record was to preserve in a permanent form the evidence of the protest, and notice by which the liabilities of parties had become fixed; and it could never have been intended that a certified copy of one-half of the record should be evidence, and not of the other half.

But it is urged that, if the certificate of the notary, from his record, was admissible, it did not show the service of any notice sufficient to charge the defendant Pico. The objection is that the certificate does not disclose the form of the notice given, but simply states that *notice of protest* was served upon Pico by letter, addressed to him at his residence, and delivered to a person

there in charge, of proper age and capacity, Pico being at the time absent. No precise form of words is necessary to constitute the notice. It will be sufficient if it inform the party to whom it is given, either in express terms or necessary implication, that the note has been duly presented at its maturity, and dishonored. It was at one time held essential, that the notice should also state that the holder looked to the party notified for payment, but this is no longer requisite, the liability being a legal consequence of the dishonor, which the party must be aware of, from the fact of receiving the notice. Story, § 353; Solarte v. Palmer, 8 Bligh N. S., 874; Furse v. Sherwood, 2 Adol. & Ellis, N. S., 388.

The statute of 1853 provides that a certificate from the notary's record shall be *prima facie* evidence of the facts therein contained. The certificate shows that "notice of protest" was given to Pico. What, then, is the import of the words "notice of protest?" Of what facts are they *prima facie* evidence?".

There is no necessity for protesting a promissory note; a demand of payment, and upon neglect or refusal, notice to the endorser, is all that is requisite. A formal protest is only necessary with foreign bills of exchange, but in practice, which is sanctioned by the statute, it is customary for notaries to formally protest notes upon a demand of the maker and his refusal of payment; and the idea conveyed by the word *protest*, both in the mercantile community, and among gentlemen of the legal profession, is not merely that a formal instrument has been drawn up by a notary public, but that the paper in question has been dishonored upon due presentation and demand. The merchant who states that he has received notice of protest of certain paper, and the lawyer who offers to prove that notice of protest has been given to the endorser of the paper in suit, both mean the same thing, that the necessary steps have been taken to fix the liability of the endorser—namely, presentment, refusal of payment, and notice given.

The same view is taken of the meaning of the term "protest" by the Supreme Court of New York, in Coddington v. Davis. In this case, Mr. Justice Jewett says: "I think that in mercantile, as well as in legal language, the term 'protest,' used in connection with a promissory note endorsed, as the defendant used it, is understood to mean the taking of such steps as by law are required to charge an endorser—that is, demand and notice." 3 Denio, 25. In the Cayuga County Bank v. Hunt, 2 Hill, 635, the notarial certificate, which was drawn up nearly two years after the presentment and protest, stated that "*notice of protest*" of the bill in question (which was an inland bill) was duly given to the defendants on the third day of grace, and it was objected that it did not state the presentment was made during office-hours, to which the Court said, Mr. Justice Cowen delivering

McFarland *v.* Pico.

the opinion : "We think, therefore, that the certificate, in fair construction, imports a presentment during the proper hours of business. These, except when the paper is due from a bank, range through the whole day down to bed-time, in the evening. It would be quite a forced presumption on the words of an officer, saying he presented on such a day, to fix the hour either before or after that when business is usually transacted." In Platt *v.* Drake, 1 Douglass, 296, a notice that a note had been protested for non-payment was held insufficient to charge an endorser, on the ground that no protest was necessary to a promissory note, and that the term, therefore, referred only to the instrument drawn up by the notary, but in Spies *v.* Newberry, 2 Douglass, 428, the same Court held that notice to the endorser of a *foreign* bill of exchange that the bill had been protested for non-payment was a sufficient notice of dishonor, and that the term *protested,* when thus used, implied that payment had been demanded, and refused.

In this last case, the Court say : "A protest is a constituent part of a bill of exchange, indispensably necessary to be made, to entitle the holder to recover the amount from the other parties to the bill; and is, by law, made evidence of presentment and dishonor. The words, *protested for non-payment*, in this way, have come to have a technical meaning in matters of this nature. In them is included, not only the idea that the bill is past due, but that payment of it has been demanded, and not being paid, it is, therefore, dishonored. They mean, that the process necessary to dishonor the bill : to wit, demand, refusal of payment, and the drawing up of a formal protest, has been gone through with. All this is included in and meant by the term *protested*. The meaning of this word, as applied to bills of exchange, is well known, well understood, and as the main object of the notice is to put the party upon inquiry, upon his guard, it seems to me this is all that is necessary for that purpose."

In this State, the statute provides for the protest of foreign bills of exchange, inland bills, and promissory notes. It requires the same record in all cases, and gives to the certificate of protest of a promissory note, the same effect as to the certificate of a protest of a foreign bill, and if in one case such certificate would, by necessary implication, import a demand of payment and refusal, so it will in all cases. We hold, therefore, that the certificate that notice of protest has been given by fair intendment, imports a notice of such facts as are sufficient in law to charge an endorser. The certificate states all the facts required by the statute, and to it we must give the effect, also prescribed by statute, of *prima facie* evidence of the facts stated. In the present case, there was no opposing evidence, and the *prima facie* evidence thus became conclusive, so far as fixing the liability of Pico.

42

McFarland *v.* Pico.

We have intentionally avoided noticing the position taken by the plaintiff's counsel. and urged with great force of argument, that no demand or notice were necessary to fix the liability of the defendant, Pico, as its consideration was not essential to the determination of the case.

Judgment affirmed.