(March 13, 1894.)

## SABIN v. BURKE.

[37 Pac. 357.]

On petition for a rehearing. Court grants a rehearing.

Cox, Cotton, Teal and Minor, James W. Reid, D. C. Mitchell and Mark A. Fullerton, for Appellants on rehearing.

The rehearing, as we understand the opinion of the court, is confined to one single question—"whether suit on the $7,300 note was prematurely brought." This may be regarded as a mixed question of law and fact, but as the testimony is not contradictory on this point, it is really a question of law. This note, made and dated Saturday, September 21st, and maturing one day after date, without grace, would mature, by its terms, on the twenty-second day of September, 1889, but as the 22d was Sunday and a legal holiday, payment could not be expected or legally demanded on that day, and the note really matured on Monday, the twenty-third day of September, 1889. The evidence is not contradictory, but clear and unmistakable, that the actions on this note were commenced on Saturday, September 21, 1889, as of September 23d, and that the writs of attachment under which Burke claims his preference, the *alias* writ directed to the sheriff of Latah county, at least, were actually in the hands of the sheriffs for execution at 9 o'clock A. M. of September 23, 1889, at which time it is clear no breach of the contract had occurred. (*Veasie Bank v. Winn,* 40 Me. 62; 3 Randolph on Commercial Paper, secs. 1037, 1062; *Vandesande v. Chapman,* 48 Me. 262; *Greeley v. Thurston,* 4 Me. 479, 16 Am. Dec. 285; *Church v. Clark,* 21 Pick. 310; Shed *v. Brett,* 1 Pick. 401, 11 Am. Dec. 209, and note.)

T. C. Griffiths and Philip Tillinghast, for Respondents.

George Langdon testified that the *alias* writ of attachment was placed in his hands on the morning of September 23d; we must believe from the testimony that he is mistaken, and has mistaken this writ for the writs in the actions that were brought in Latah county, which were dismissed without any further proceedings being taken. These papers were left in the hands of the clerk of the court on the evening of the 21st of September, merely as custodian, with implicit instructions not to file or certify any of the papers until he received instructions from the plaintiff in the action, Burke, so to do. This is a very customary thing to be done and cannot be questioned for fraud. The attorney in the case was about to leave town and simply handed the papers to the clerk with the request that when he was instructed so to do by the plaintiff, that he file them. (*Seaver v. Lincoln,* 21 Pick. 269.) Upon examination of this case the court will see that strangers to the original action attempt to attack the judgment collaterally upon the ground that the debt was not due at the time the proceedings to foreclose the mortgage were commenced. (*Murray v. Weigle,* 118 Pa. St. 159, 11 Atl. 781; *Wilson v. Van Leer,* 127 Pa. St. 371, 14 Am. St. Rep. 854, 17 Atl. 1097; *Appeal of Bank,* 83 Pa. St. 528; *McLead v. Applegate,* 127 Ind. 349, 26 N. E. 830; *Essig v. Lower,* 120 Ind. 239, 21 N. E. 1090; *McAlpine v. Sweetzer,* 76 Ind. 68.) Even if such suit had been prematurely brought, the suit brought by the plaintiffs was a collateral attack upon the judgment rendered thereon, and that such attack cannot be made upon such a judgment for mere irregularities, which would be all that the premature bringing of the suit can be said to be, we submit the following additional authorities: *Craig v. Fruzier,* 73 Ga. 246; *Hardin v. Lee,* 51 Mo. 241; *Johnson v. Gage,* 57 Mo. 160-165; *Paine v. Mooreland,* 15 Ohio, 435, 45 Am. Dec. 585; *Lessees of Cochran v. Loring,* 17

Ohio, 409; *McDonald v. Sincox,* 98 Pa. St. 619; *Cooper v. Reynolds,* 10 Wall. 308; *Needham v. Wilson,* 47 Fed. 97; *Voorhees v. Bank of United States,* 10 Pet. 449.

Attorneys for Appellant in reply.

The discussion of the question of "collateral attack" seems to us useless, not before the court, a needless imposition and waste of its time. This court in its original opinion, filed January 31, 1894, held under the authority of *Jones v. St. Johns Irr. Co.,* 2 Idaho, 58, 3 Pac. 1, that "no appeal having been taken by the defendant, the question determined against him cannot be reviewed by this court."

MORGAN, J.—In above cause attorneys for appellants file petition for rehearing and desire to resubmit, first the question: "As to whether or not a note without grace made payable in a bank, placed and remaining therein for collection until due, may be sued upon after banking hours, on the evening of the day it falls due, when the opening and closing hours are well known to the maker." We shall examine this question in the light of the law as we understand it to exist to-day, and in doing so will be obliged to pass over some of the same ground partially covered by the original opinion.

Daniel on Negotiable Instruments states: "If payment has been demanded and refused on the day of maturity, we should say that the action would lie, for the contract to pay on demand within reasonable hours is then broken, and, in the language of Parsons, he has declared he will not pay and can want further delay only to arrange the means of avoiding payment." In this state no demand of payment is necessary, before bringing suit. Then it follows that as soon as the time has fully expired within which the maker contracted to pay, suit may be brought at once.

The maker contracted to pay this note of $24,350 at the office of John Burke, which the evidence shows was the banking-

house of John Burke, in Lewiston on the third day of September, 1889. The custom of this bank was to open at 9 A. M. and close at 4 P. M. The defendant had transacted all or nearly all his business at this bank for years, and the hours of opening and closing were well known to him, Barnett.

Knowing these facts, he, the defendant, makes his note payable there on the third day of September, 1889, and if he desired to pay, or was able to pay, he well knew that he must appear at the bank before 4 o'clock on the afternoon of September 3d. He therefore contracted to pay before 4 o'clock P. M. of said day as effectually as if he had so stipulated in the note. After that hour the bank would be closed, the papers locked up and the officers gone.

If the maker has contracted to pay his note at a certain time, can he complain if suit is brought after that time has fully expired and he has neglected to pay? In law a neglect to pay is precisely the same as a refusal, and it is so denominated. Daniel on Negotiable Instruments, section 1208, says: "When the maker of a note, or the drawer or acceptor of a bill makes it payable on a day certain, his contract is to pay it on demand on any part of that day within reasonable hours. The protest must be made on that day which presupposes a default, as no protest can be made until default is made, and whether it be the last day of grace, or the day of maturity, when there is no grace, it is clear upon principle, that as soon as payment is refused, the action may be commenced." (*Veazie Bank v. Winn,* 40 Me. 62.)

In this case Tenney, J., says: "A suit may be properly brought against the maker upon a negotiable promissory note on the last day of grace, after the demand of payment, made at a reasonable hour of that day and a refusal, and, if a note is payable at a bank, a suit may be properly commenced on the last day of grace, after banking hours without demand of notice." The court adds substantially that it seems to be re-

garded as settled in this state (Maine) and in Massachusetts, and also in other states upon what is considered the weight of authority in England, that an action can be maintained if brought on the last day of grace where there has been a previous demand and refusal, or where the note is *made payable in bank,* on *that day*.

There is now no distinction in principle between a note payable without grace and one payable with grace, the one being due on the day of maturity and the other on last day of grace, the time in both cases being given voluntarily by the creditor, and the contract to pay at the time specified being voluntarily entered into on the part of the debtor. The distinction is sentimental, not real.

It is stated by some courts that "as grace was originally matter of indulgence and courtesy, and not of contract, it perhaps may be contended that although a debtor has the whole of the last day of the credit stipulated for by contract to make payment, yet a different rule may apply to grace, which is not a part of the contract." This position is not now tenable, as the three days of grace, where they are allowed, is either provided for by statute or commercial law, and are as much a part of the contract as the time limited in the note. (3 Randolph on Commercial Paper, sec. 1054; Chitty on Bills, 407.) The reason for the distinction having failed, therefore the distinction itself ceases. And certainly in the law, where there is no longer any sense in a distinction that was formerly held, the distinction itself should be swept away.

It is clear that a demand may be made upon the maker of a note during business hours on the day it falls due or on the last day of grace, and if payment is refused the note may be at once protested, and if protested, suit may be brought thereon. In this state no protest is necessary, of course, where there are no indorsers and no sureties—that is, no persons to be affected.

And as stated, in this state, no demand is necessary before bringing suit; the maker having himself fixed the time of payment and in effect the time of the expiration of such day of payment, there would seem to be no reason why suit may not be brought after the expiration of such time and on the day of its expiration; to hold otherwise would be to give the maker more time than he had contracted for, and to compel the payee to wait before bringing suit beyond the time limited by the maker himself and in effect to make a new contract for him. 3 Randolph on Commercial Paper, section 1057, says: "To support an action on the day of maturity, or before the end of banking hours on that day, if the paper is made payable at bank, there must, of course, have been a previous demand and refusal of payment," and quotes *Vandesand v. Chapman,* 48 Me. 262, which is precisely in point.

'This suit was brought on note entitled to grace, whether by the terms of the contract or by statute the opinion does not inform us, but in either case the note is the same, and the law and the reason of the law applicable thereto is the same as if the note was made payable on the date of the last day of grace. The case of *Greely v. Thurston,* 4 Me. 479, 16 Am. Dec. 285, is to the same effect and is a still stronger case; in the latter case the grace was allowed in the terms of the note and was therefore by contract. (*Colman v. Ewing,* 4 Humph. (23 Tenn.) 241; 3 Randolph on Commercial Paper, sec. 1062.)

In *Church v. Clark,* 21 Pick. 310, Chief Justice Shaw, speaking for the court, says: "By making a note payable at bank the effect of the contract is, that the note shall be paid at some time during the usual bank hours at such bank, and there is no default on which an action can be commenced, until the close of such bank hours." In this case an attachment was served at one minute past 12 o'clock on the morning of the last day of grace, in effect holding that an action might have been properly brought after the hour of closing the bank had arrived. The learned justice goes on to say that if no bank is named the hour will be determined by the usual banking hours at the bank, or several banks, in the place where the note is payable." It being payable at a bank; but as we have seen

there now is no difference between notes with grace and notes without, therefore, etc.

It is contended that the case of *Bank of United States v. Carneal,* 2 Pet. 543, is not in point and yet the supreme court of the United States, speaking through Mr. Justice Story, uses the following language therein: "Upon the first point the evidence is, that on the day when the note became due, the note was in the bank at Cincinnati, the bank being the holder thereof, and it being payable there; and the usual banking hours were over, it was delivered to a notary by the officers of the bank for protest, they informing him at the time that there were no funds there for the payment of the note. We are all of opinion that this was a sufficient proof of a due demand of payment.

Where a note is payable at a bank, it is not necessary to make any personal demand upon the maker elsewhere. It is his duty to be at the bank within the usual hours of business to pay the same, and if he omits so to do, and a demand is there made of payment by the holder, within those hours, and it is refused or neglected to be made, the holder is *entitled to maintain his action* for such dishonor. But where the bank is itself the holder of the note so payable, no formal demand is necessary to be made of payment." This does not make one rule of law applicable to one class of holders, and a different rule as to others. It makes a distinction between one class of notes where the maker has by his contract fixed the hours within which payment is to be made, and a class of notes in which he has not so fixed the time. The court makes no distinction where the contract makes none. The Revised Statutes of Idaho, section 3484, paragraph 5, makes the same distinction.

The question as to when suit may be brought upon a note in which the time of payment is not so fixed is not before this court, and no opinion is intended to be given therein. If it is desired to make one rule as to all notes, without reference to the contract of the parties therein, it should be done by the legislature, as the court does not conceive it to be its duty, nor that it has the authority to so change the contract of the parties. We only hold that when the time has fully passed in

which the maker has contracted to pay his note and he is in default, that suit may then be brought.

The first case of which a report is published in this country and which is directly in point, is a *nisi prius* decision of Chief Justice Parsons, and is reported ·in an American edition of Chitty on Bills, page 225, note y, published in 1809 and edited by Mr. Story, afterward Mr. Justice Story of the supreme court of the United States, that of *Pork v. Page*, Suffolk, November term, 1808. He says: "The note is due on the last day ·of grace, and if payment is refused the maker may be sued on that day; I have examined the record of that case and find that it was a suit by the indorsce against the indorser of a promissory note, dated the 7th of July, 1807, payable at sixty days with customary grace. The last day of grace was therefore the eighth day of September. The writ was dated the eighth day of September, and was served by an attachment of real estate at 11 o'clock on that day." To this opinion at *nisi prius,* no exception appears to have been taken, and parties and counsel acquiesced. The only difference between the case thus appearing, and the note cited, is that the action was against the indorser, but if the action would lie against the indorser, who is only provisionally liable on the default of the maker; *a fortiori,* it seems would lie against the maker who is the principal debtor.

To the same effect substantially is the case of *Henry v. Jones,* 8 Mass. 453. This was a case where grace was not allowed as the law then stood; the note was dated March 4, 1809, due in ·sixty days. The note was therefore due May 3d; on May ·2d demand was made on the maker, and on May 3d demand of payment was made on indorser, which was refused; suit was thereupon commenced and writ of attachment served at once, at 5 o'clock A. M. on the 3d. The court nonsuited because demand had not been made on the maker on the 3d, when the note was due, instead of the second day of May, in effect holding that action would have been sustained if demand had been made upon the maker on the day the note was due. Here the rule was held the same on a note without grace as on one with grace. Honorable Isaac Parker was then on the bench of

the supreme court of Massachusetts, 1812, and was chief justice of the same court when the case of *Shed v. Brett*, 1 Pick. 401, 11 Am. Dec. 209, and note, was decided, 1823, and delivered the opinion.

We have, then, as approving this doctrine Chief Justice Parker, Chief Justice Shaw, Chief Justice Parsons, Chief Justice Story, and Chitty in his works on Notes and Bills, as well as the other atuhors—an array of legal ability which would seem sufficient to settle any question of commercial law.

Chief Justice Parker says also in *City Bank v. Cutter*, 3 Pick. 418, "that the doctrine was always practically recognized that suit may be brought on the very day the note falls due after demand and notice, for then there is a breach of promise, and if the note is to be paid into a bank and is not paid during the business hours of the day, a right of action has accrued." Two matters were settled by these authorities—no difference is made between notes with and without grace, and a suit may be commenced on the day a note falls due after default.

We are referred to *Wilcombe v. Dodge*, 3 Cal. 260, 58 Am. Dec. 411. In this case the note was not made payable at any bank nor any particular place, and no demand and refusal were proven. In *McFarland v. Pico*, 8 Cal. 626, the note was not made payable at any place, where business hours were established, and it appeared on the trial that there were no regular business hours in the town where the note was made payable. Neither case is similar to the one at bar.

In *Davis v. Eppinger*, 18 Cal. 379, 79 Am. Dec. 184, the facts are the same as in the two former cases and not at all similar to the case at bar. In *Bell v. Sackett*, 38 Cal. 407, the note was dated November 4, 1864, and was payable on demand, at no particular time or place, and the court held that as the suit was commenced on November 7, 1868, that being the last day of grace, that the statute of limitations had not run, and the suit was in time. This case is further removed from similarity with the one at bar than the others. These are all the cases cited from California courts.

We do not deem it necessary to review all the cases cited, as the rule given in this case and the reasons therefor seem satis-

factory to us, and seem, as was said before, to be supported by the weight of authority. This review of a portion of the authorities relating to the questions involved has covered more ground than we had anticipated, but we have been moved thereto by the zealous persistence of the distinguished counsel engaged in the cause, on the respective sides.

The second question presented is, "Was the action on the note dated September 2, 1889, for $24,350, commenced on the morning or the evening of September 3, 1889, and after banking hours?" We had already examined this question, as we thought fully, before writing the original opinion, and we have again examined the testimony and must adhere to the original opinion. The court below found that the suit was commenced in the evening after banking hours of the third day of September, and we think the testimony supports the court in so finding. The third question is, "Was the action on the note dated September 21, 1889, commenced on the morning or the evening of September 23, 1889, and after banking hours?"

A rehearing on the first and second questions submitted is denied. As to the third the court finds that suit was commenced on the $7,300 note on September 23, 1889; the note was dated September 21st, which was Saturday. It was due one day after date. The court grants a rehearing on the question as to whether suit upon this note was prematurely brought.

Huston, C. J., and Sullivan, J., concur.