GILBERT L. FENLASON *vs.* HAROLD J. SHEDD, et als..

Penobscot. Opinion September 11, 1912.

*Trespass Tax. Tax Collector. Assessment. Exceptions. Refusal to pay tax. Assessors. Arrest. Premature arrest. R. S., Ch. 10, Sec. 20. Demand. Waiver of Exception from arrest.*

1. The plaintiff contends that his arrest, even if in all other respects legal, was premature. This contention must prevail, R. S., Ch. 10, Sec. 20.

2. It is not in controversy that the demand was made on the plaintiff for payment of the tax on February 24, 1909, and that he was arrested for non-payment of the tax on March 8th following.

3. It is unnecessary to note the fraction of the days of demand and arrest.

4. The phrase "for twelve days after demand," in the common meaning of the language gives the tax payer twelve full days after the day of demand in which to pay the tax or point out property.

5. The day of demand being excluded, twelve full days must pass before the time "after twelve days" can begin to run.

6. The contention of the defendants that if the arrest was prematurely made, the plaintiff waived his claim of exemption from arrest for the full length of time prescribed by the statute by peremptorily declining to pay the tax cannot prevail.

7. The refusal to pay contemplated by the Statute is presumed to continue for twelve days, and the refusal to pay during the whole twelve days is the basis of the arrest.

On exceptions by the plaintiff. Sustained.

This is an action of trespass in which the plaintiff alleges that he was illegally arrested and imprisoned upon a tax illegally assessed. The conceded facts show that the defendant, Shedd, tax collector of the town of Mattawamkeag, arrested the plaintiff for refusal to pay the tax assessed against him in 1908 by the other defendants, Webster, Wyman and Applebee, purporting to be the legally qualified assessors for that year.

Plea, the general issue with brief statement justifying his acts.

On motion and exceptions. Motion waived. Exceptions sustained.

Case is stated in the opinion.

*George E. Thompson, Edgar M. Simpson,* for plaintiff.

*James H. Burgess, Martin & Cook,* for defendants.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

SPEAR, J. This is an action of trespass in which the plaintiff alleges that he was illegally arrested and imprisoned upon a tax illegally assessed. The conceded facts show that the defendant, Shedd, tax collector of the town of Mattawamkeag, arrested the plaintiff for refusal to pay the tax assessed against him in 1908 by the defendants, Webster, Wyman and Applebee, purporting to be the legally qualified assessors for that year. The case comes up on fifteen exceptions of the plaintiff, only one of which, inasmuch as it is decisive of the case, need be considered. The plaintiff contends that his arrest, even if in all other respects legal, was premature. This contention must prevail. R. S., Ch. 10, Sec. 20 provides: "If a person so assessed, for twelve days after demand, refuses or neglects to pay his tax and to show the constable or collector sufficient goods and chattels to pay it, such officer may arrest and commit him to jail, until he pays it, or is discharged by law." It is not in controversy that demand was made on the plaintiff for payment of the tax on February 24th, 1909, and that he was arrested for non-payment on March 8th following. It is unnecessary to note the fraction of the days of demand and arrest. The defendants, however, contend that the arrest being made on the 12th day after demand, complied with the requirement of the statute, and confidently cite *Cressey* v. *Parks,* 75 Maine, 387 as a conclusive precedent. But it will be observed that the language of the statute construed in this case is entirely different in its "common meaning" from that of the statute now under construction. In the former statute the officer was directed to keep such distress "for the space of four days." . . . The court held that the day of seizure should be excluded in computing the time, and that the four days then began to run. This was the time the officer could keep it. This language is unambiguous and clear. The fifth day or any part of

it would be more than four days. The meaning of the statute now under consideration is also as definite and specific as the use of the English language can make it. The phrase "for twelve days after demand," as was here used "in the common meaning of the language," gives the tax payer twelve full days after the day of demand within which to pay the tax or point out property. In other words, the day of demand being excluded, twelve full days must pass before the time "after twelve days" can begin to run.

The case of *Taylor* v. *Jacoby,* 2 Penn. State, 495, 45 Am. Dec., 615, is in point. The syllabus states the issue and holds that "an action on a promissory note payable one day after date cannot be maintained until the day after the day of payment," and that the maker of such note "is entitled to the whole of the last day to make payment." Chief Justice Gibson after referring to the conflict of decisions with reference to reckoning the days of grace and to the beginning of suits on promissory notes and bills of exchange, and stating that they depend upon commercial usage, then announces the rule applicable to the beginning of a suit upon a note or contract make payable a certain number of days after a given date, as follows: "The case put to illustrate the consequences of a different rule, is the very case before us; and to say that the day of payment is not the day after the date, but the day of the date itself, would be contrary to the plain meaning of the words and obvious design of the parties, who evidently intended that the debt should be payable on the second day; and as the defendant was entitled to the whole of it for performance of his engagement, he could not be called on by process, original or judicial, before it had expired." We are unable to discover any distinction between the principle announced in this case and that involved in the interpretation of the statute before us. It was intended, undoubtedly, that the tax should be payable on the twelfth day precisely as this note was payable on the second day, and that the tax payer was entitled to the whole of the twelfth day for the performance of his engagement precisely as the maker of the note was entitled to the whole of the second day for the payment of the note, and that no process could be served upon him before the twelfth day expired, precisely as it could not have been served upon the maker of this note until the second day had expired. To make the parallel exact, suppose the statute had

said "if a person so assessed, for (one) day after demand, refuses or neglects to pay," etc., would it be contended that the plaintiff could be arrested the next day after the demand? If so, the demand could be made just before midnight and the arrest just after midnight, an act instanter with the demand, and entirely defeat the purpose of the law. This illustration is used in *Bigelow* v. *Wilson,* supra, with reference to the computation of time in the redemption of a mortgage.

In *Butts* v. *Edwards,* 2 Denio, 164, a statute similar in language to our statute, is construed by the court in full harmony with the Penn. case. The court say: "'After,' as used in Rev. St., Ch. 24, making it the duty of an officer making a distress for rent to appraise the goods five days 'after' making the distress, means five full days from the time the distress was made, and, where distress was made on the 9th day of March, the earliest date on which an appraisal could be made was on the 15th day of March." Here it will be observed by comparing the dates in this case that five full days, the 10th, 11th, 12th, 13th and 14th, between the day of distress and the day of appraisal were allowed the officer for making the appraisal. But in the case at bar only eleven full days were allowed between the day of demand and the day of arrest. To have allowed twelve full days the arrest should have been made on the 9th. While as before suggested, exceptions to this rule lie in the case of computing time upon bills of exchange and days of grace, based, as Chief Justice Gibson says, "on arbitrary and inveterate usage which make up the body of commercial law," yet the decisions are by no means uniform upon these instruments, and the late Justice Field of the Supreme Court of the United States, in *McFarland* v. *Pekoe,* 8 Cal., 626, says: "While the endorser becomes liable to pay on the last day of grace, immediately upon default of the maker, and while notice given to him on such default on that day will be sufficient, he could not be sued until the next day for he has the whole of the last day to make payment." In harmony with these rules is the principle laid down in *Bigelow* v. *Wilson,* 1 Pick., 485. "No moment of time can be said to be after a given day, until that day has expired." Our conclusion is that both upon reason and authority the explicit language of our statute should be construed to give the person assessed twelve full days

between date of demand and the date of arrest. But the defendants contend that if the arrest was prematurely made, the plaintiff waived his claim of exemption from arrest for the full length of time prescribed by the statute by peremptorily declining to pay the tax. But this contention cannot prevail inasmuch as the twelve days is predicated upon a refusal by the tax payer to pay. The refusal contemplated by the statute is presumed to continue for twelve days. Refusal to pay during the whole twelve days is the basis of arrest. We are unable to discover how under the language of this statute there could be a waiver of the very thing which the statute contemplated the tax payer must do in order to make himself amenable to arrest.

*Exceptions  sustained.*