Mr Justice Thompson
 

 delivered the opinion of the Court.
 

 This suit was brought in the circuit court of the district of Columbia; for the county of Alexandria, upon a promissory note made by Humphrey Peake, and indorsed by the defendant in error, Upon the trial the jury found a special verdict, upon which the court gave judgment for the defendant, and the case comes here upon a -writ of error.
 

 The points upon which the decision of the case turns, resolve themselves into two questions.
 

 1. Whether notice of the dishonour of the note was given to the indorser in due time ?
 

 2. Whether such notice contained the requisite certainty in the description of the note
 
 1
 

 The note bears date on the 23d day of June 1829, and is for the sum of 1400 dollars, payable sixty days after date at the Bank of Alexandria. The last day of grace expired on the 25th of August, and on that day the note was duly presented, and demand of payment made at the bank, and protested for non payment; and on the next day notice thereof was sent by mail to the indorser, who resided in the city of Washington.
 

 The general rule, as laid down by this court in Lenox v. Roberts, 2 Wheat. 373, 4 Cond. Rep. 163, is, that the demand of payment should be made on the last day of grace, and notice of the default of the maker be put into the post office early enough tobesent by the mail of the succeeding day. The special verdict in the present case finds, that according to the course of the mail from Alexandria to the city of Washington, all letters put into the mail before half past eight o’clock, P. M. at Alexandria, would ‘ leave there some time during that night, and would be deliverable at Washington the next day, at any time after eight o’clock, A. M.; and it is argued on the part of the defendant in error, that as demand of payment was made before three o’clock, P. M., notice of the non payment of the note should have been put into the post office on the same day it was dishonoured,
 
 *46
 
 early enough to have gone with the mail of that evening. The -law does riot require the utmost possible diligence in the holder in giving notice of the dishonour of the note; all that is required is ordinary reasonable diligence; and what shall constitute reasonable diligence ought to be regulated with a view to practical convenience, and the usual course of business; In the case of the Bank of Columbia v. Lawrence, 1 Peters 583, it is said by this court to be well settled at this day, that when the facts are ascertained, and are undisputed, what shall constitute due diligence is a question of law: that this is best calculated for the establishment of fixed and uniform rules on the subject, and is highly important for the safety of holders of commercial paper. The law, generally speaking, does not regard the fractions of a day; and although the demand of payment at the bank was required to be made during banking hours, it would be unreasonable, and against what the special verdict finds to have been the usage of the bank at that time, lo require notice of non payment to be sent to the indorser on the same day. This usage of the bank corresponds with the rule of law on the subject. If the time of sending the notice is limited to'a fractional* part of a day, it. is well observed by chief justice Hosmer, in the case of the Hartford Bank v. Stedman and Gordon, 3 Conn. Rep. 495, that it will always come to a question, how swiftly the notice can be conveyed. We think, therefore, that the notice sent by the mail, the next day after the dishonour of the note, was in due time.
 

 The next question is, whether, in the notice sent to the in-dorser, the dishonoured note is described with sufficient certainty
 

 The law has prescribed no particular form for such notice. The object of it is merely to inform the indorser of the non pay- • ment by the maker, arid that he is held liable for the payment.thereof.
 

 The misdescription complained of in this case, is in the amount of the note. . The noté is for 1400 dollars, and the notice describes it,as for the sum of 1457 dollars. In all other respects the description is correct: and in tlie margin of the note is set down in figures 1457, and the special verdict finds that the note in question was discounted at the bank, as and • for a note of 1457 dollars; and the question is, whether this
 
 *47
 
 was such a variance or misdescription as might reasonably mislead the indorser'as to the note, for payment of which he was held responsible. If the defendant had been an indorser of a number of notes for Humphrey Peake, there might be some plausible grounds for contending that this variance was calculated to mislead him. But the special verdict finds that from the 5th day of February 1828 (the date of a note tor which the one now in question was a renewal), down to the day of the trial of this cause, there was no other note of the said Humphrey Peake indorsed by the defendant, discounted by the bank, or placed in the bank for collection or otherwise. There was, therefore, no room for any mistake by the indorser as to the identity of the note. The case falls within the rule laid down by this court in the case of Mills v. The Bank of the United States, 11 Wheat. 376, that every variance, however immaterial, is not fatal to the notice. It must be such a variance as conveys no sufficient knowledge to the party of the particular note- which has been dishonoured. If it does not mislead him, if it conveys to him the real fact withoüt any ’ doubt, the variance- cannot be material, either to guard his rights or avoid his responsibility. In that case, as in the one now before the court, it appeared that there was no other note' in the bank indorsed by Mills; -and this the court considered a controlling fact, to show that the indorser could not have been misled by the variance in the date of the note, which was the misdescription then complained of.
 

 The judgment of the circuit court is accordingly reversed, and the cause sent back with directions to enter judgment for the plaintiffs, upon the special verdict found by the jury.
 

 This cause came on to be heard on the transcript of the record from the circuit court of the United States for the. district of Columbia; holden in and for the county of Alexandria, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court that the judgment of the said circuit court in this cause be and the same is hereby reversed, and that this cause be and the same is hereby sent back to the said circuit court, with directions to that court to enter judgment for the plaintiffs, upon the special verdict found by the jury.