## Commercial and Railroad Bank *v.* Hamer *et al.*

Where a note was made payable at a bank, and the notary did not demand payment until after banking hours, and where the front door of the bank was closed, but went round to the back door, and finding the teller in the bank according to the custom of the bank, demanded payment, but was refused, there having been no funds for payment in the bank during the day: held, the demand was sufficient to charge the indorsers, on protest and notice.

IN ERROR from the county of Warren.

The defendants in error instituted a special action on the case against the plaintiffs in error, to recover damages for a failure to use due diligence in having a promissory note presented for payment, which had been placed in the Railroad Bank for collection by the defendants. An agreed case was submitted to the court below, on which it rendered a judgment against the bank, and the case is brought up by writ of error to reverse that judgment, exceptions having been taken to the opinion of the court in rendering the judgment.

The facts agreed on are as follows, to wit: "That the note for $8,375, mentioned in the declaration, was received from plaintiffs by defendants on the 6th day of May, 1837, in the ordinary course of business, for collection, and for protest if payment should not be made at maturity; that on the 4th day of January, 1838, after two o'clock, P. M., (two o'clock, P. M., being the ordinary time for closing the banks in Vicksburg,) said note was delivered to E. H. Maxy, a commissioned notary public of this state, residing in Vicksburg, and who was the notary usually employed in the business of the defendants of a like nature, and to protest the paper belonging to them; that said Maxy having called at the Commercial and Railroad Bank of Vicksburg, and received from defend-

ants the said note, called, after two, and between two and four o'clock, P. M., of that day, at the office of the Planters' Bank of the State of Mississippi, at Vicksburg, where said note was payable, and finding the front door of said office closed, entered the same by a back door, and presented said note to the teller of said bank, and demanded payment thereof, which was refused; and thereupon the said notary protested said note for non-payment, and gave notice of the same; that no funds were in fact in said office of the Planters' Bank during that day for the payment of said note, or any part of it, that plaintiffs sued the makers and indorsers of said note, and were nonsuited; that N. H. Rapalye was at the time of the maturity of the note, and still is, insolvent, and that at said maturity one of the indorsers was solvent, but now all are insolvent; also that at the time of said maturity, the custom of transacting business of the like kind among the notaries of Vicksburg was, to call at any time of the day between ten o'clock, A. M. and four o'clock, P. M., to make demand and protests of notes, and that said notaries frequently called after the closing of the banks, and made examination, demands, and protest, and this custom of the notaries had been usually practiced for many years previously, and was continued until after January, 1838."

Norcom and Mason for plaintiff in error.

J. Holt, for defendant in error.

The judgment was rendered in this case by the circuit court against plaintiffs in error, on the ground that a bank receiving a note for collection, is bound, at its maturity, to have it duly presented for payment, so as to charge the parties thereto, and on failure to do so, is liable to the holder. This is now the settled doctrine in the United States, and is laid down by Bailey in his valuable work on Bills, page 250, in this explicit language: "An agent receiving a note or bill for collection, is bound to have it duly presented, and if it be dishonored, to have it duly protested, if a bill, and whether a bill or note, to send immediate notice of the dishonor to the party from which he received it, in order that he may give notice to the parties to the bill. A neglect in any of these particulars, by means of which the holder's resort to

the parties on the bill is lost, will render the agent liable to an action by the holder for the negligence." To the same effect are the following authorities: Bank of Washington *v.* Triplett, 1 Peters' Sup. Court Rep. 25; Smedes *v.* Utica Bank, 20 Johns. R. 372; 3 Cowen, 662; Durnford *v.* Patterson, 7 Martin, 460; Miranda *v.* City Bank of New Orleans, 6 Louis. Rep. 740; 15 Martin, 610; McKinstee *v.* Bank of Utica, 9 Wendell, 46; 11 Wendell, 473. And in Canonge *v.* Louisiana State Bank, 15 Martin, 344, it was held, that it is not necessary for the holder of a note to sue the indorsers before suing a bank for negligence in not taking the proper steps to charge them.

The note received by the plaintiffs in error from defendants was payable at the office of the Planters' Bank at Vicksburg, the same town in which plaintiff's banking house was situated. It was the custom of the banks of Vicksburg to close their doors at two o'clock P. M. of each day, and it, of course, became incumbent upon plaintiffs in error to have this note presented and payment demanded on the day of its maturity, at the office of the Planters' Bank, before two o'clock P. M., the hour at which, by its known custom, its doors would be shut. A demand after that hour would be as ineffectual to charge the indorsers as a demand made on any subsequent day; the day for all purposes of business connected with the bank expiring with that hour. It is admitted, that the note was not placed in the hands of the notary for the purpose of making a demand until after two o'clock P. M. of the day on which it fell due, and that the notary on proceeding to the Planters' Bank to present the note and demand payment, found the bank closed, &c. Thus, for want of due demand, the indorsers were discharged; they alone were solvent, the drawer of the note being insolvent. A loss of the whole debt was thrown upon the defendants in error by this gross negligence of plaintiffs, and no ground is perceived on which they can possibly escape from the liability thus incurred.

The custom shown to have existed for a short time among the notaries of Vicksburg, of demanding payment of notes at the banks after they had closed their doors, cannot overturn the rule of law which requires that such demand shall be made *during*

banking or business hours.  Such was the doctrine of this court
in 2 Howard, Willcox & Fearn *v.* A. G. McNutt.

No question can arise as to whether the responsibility shall rest
upon the notary or the bank.  It is very probable that when a
bank places a note in the hands of a competent officer to have
demand made, &c. that it is thereby discharged from all liability
to the holder, who must look to such officer for any negligence in
the performance of the duty assumed.  But in this case, the bank
is alone culpable.  The note was withheld from the notary until
it was too late, by the custom of the bank where it was payable, to
demand its payment on the day it matured.

Mr. Chief Justice SHARKEY stated the case, and delivered the
opinion of the court.

As a legal proposition, it is undeniably true that a bank which
receives a note or bill for collection, is bound to use due and pro-
per diligence in making demand and giving notice, so as to hold
all parties liable; and in default of such diligence, the bank itself
becomes responsible to the party who deposited the note.  This
principle has been acknowledged as the true one by an unbroken
train of adjudications, and the principle being admitted, the true
and only question in all such cases is, what constitutes a diligence
that will be sufficient to exonerate the bank from its responsibility.
We are not called on to determine whether the bare delivery of
the note in due time to a competent notary is of itself such an act
as will discharge the bank.  Surely if the bank placed the note
in the hands of a notary, who presented it in due time, and de-
manded payment, and gave the requisite notices, then the bank
must be discharged; and thinking this to be the case in the pres-
ent instance, our inquiry is necessarily narrowed down to this sin-
gle point, was the presentment made at a proper time?

As a general rule, it is undoubtedly true that where a note or
bill is made payable, either in its terms or by acceptance, at a bank
.or banker's, it must be presented and payment demanded within
the business hours of such bank or banker.  This is laid down as
the rule in Chitty on Bills, 8 Am. ed. 421.  It was so held in the
case of the Bank of Alexandria *v.* Swann, 9 Peters, 33; in Elford
*et al. v.* Tud, 1 M. & S. 28; and in Parker *v.* Gordon, 7 East,

385. But the rule is subject to an exception, and the case at bar falls within that exception. Thus in the case of Garrett *v.* Woodcock, 6 M. & S. 44, the court said, "though the presentment was out of banking hours, there was a person stationed for returning an answer, and an answer was returned the same as would have been if the presentment had been made within the hours of business. The answer was not that the party came too late, but that there were no orders. The object of the presentment was completed," &c. So in Henry *v.* Lee, 2 Chitty's Rep. 124, Lord Ellenborough held that presentment out of business hours, the note being payable at a banker's, was not in general sufficient, and would not do if nobody is there of whom demand could be made; but, said his lordship, if somebody is there, and the person presenting gets an answer, it is sufficient.

The case before us is even stronger for the plaintiffs in error than either of those referred to. The business hours of the bank closed at 2 o'clock; the presentment was made by the notary between 2 and 4 o'clock P. M. on the third day of grace, at the bank, and demand made of the teller, who was found there. He was a proper officer of the bank to return an answer, and his answer was, that there were not then funds in bank to pay the note, nor had there been any during the day. The same answer was received which would have been given within business hours, and by the same officer, and this we think brings the case within the exception stated. He did not say that the presentment was too late, but that there were no funds.

An additional circumstance is stated in the agreed case, which if the case were doubtful in its character, would be entitled to great weight. It appears that the plaintiffs below sued the makers and indorsers of the note, and were non-*suited.* It is probable that the presentment and demand were held insufficient to charge the indorsers, and that the non-suit was the consequence. If so, we can only say that the parties rested with too much confidence on the correctness of that decision.

The judgment must be reversed, the cause remanded, and a *venire de novo* awarded.