I. This Court, on the previous hearing, disposed of all the questions presented upon the facts as they then appeared, and nothing now remains open, so far as those facts are concerned, except the question, whether the notice to the defendant, as the endorser of *145 the notes in suit, was sufficient. (Cook v. Litchfield, 5 Sandf. S. C. 330; S. C., 5 Seld. 279.)
n. The notes, in suit, were given for a debt contracted by a firm of which the defendant was a dormant partner, and for which debt he was liable.
HI. He received an assignment of all the effects of the firm, and the one which succeeded it, and agreed to pay the notes in suit, and is bound to pay them under that agreement, as well as under the agreement of June 15th, 1852.
IV. The evidence, to apply the respective notices of protest to the several notes, was competent, and the jury have found that the notices of protest did actually communicate, to the defendant, notice of the presentment and protest of the notes in suit, as they severally became due, and their finding, is conclusive on the question of notice. (Cayuga Co. Bk. v. Warden, 1 Com. 413; S. C. 2 Seld. 19.)
Chas. Tracy, for the defendant, argued, among others, the points following, viz.:—
I. The notices of protest were insufficient. (5 Seld. 279, Cook v. Litchfield.)
II. The special findings of the jury, that the defendant knew, in each case, which note was intended, should be set aside, or treated as a nullity. (1) The Court erred in submitting those questions to the jury, and the defendant took an exception, No evidence, of any sort, had been given to show the fact of the defendant having such knowledge; and notice in these cases is to be proved, not presumed. (Parson’s Merc. Law, 115; 5 Seld. 279, Cook v. Litchfield; 2 Hill, 587, 595, Bansom, v. Mack) (2) The verdict on those questions is wholly unsupported by evidence. It is against the evidence and against law.
IH. The defendant is not liable as joint maker, with Carew. The complaint alleges, that the defendant and Carew, having been partners under the name of Joshua L. Carew, they afterwards made these notes by that name, to be used in liquidating the debts of such partnership. This allegation is not sustained.
IV. The supposed debt to Eyckman, for hops, is no ground to support the present action. 1. That debt is stated to have been contracted in October, 1846. It was a debt to Eyckman, and not *146 to the plaintiff. 2. The debt was released, on the delivery of these notes. The debt, therefore, has no importance in this case, unless the consideration of the notes should come in question. 3. That debt was not assigned to the plaintiff; and, he being a mere endorsee, cannot sue on the original consideration. (4 Sandford, 93, 97; Morris v. Hudson, 1 Hill, 577; National Bank v. Norton.) 4. Such supposed debt was barred by the statute of limitations before this action was brought. 5. These notes, in the hands of Cook, the plaintiff, are mere commercial paper, having for maker Carew alone, and for endorsers first, Litchfield, and second,,Ryckman. The plaintiff can hold the defendant only upon his contract as endorser.
Y. There is nothing in the case excusing the plaintiff from giving due notice of dishonor, or rendering defendant liable, without such notice. 1. The articles of partnership between Carne, Carew, Litchfield and Hubbard, make no provision for such notes as these. 2. At the date of those articles, (1st January, 1849,) the only debt to Ryckman outstanding against Carew, or against the Detroit brewery establishment, amounted to barely $43.05. 3. The agreement between Carew and the defendant, made 15th June, 1852, has no influence on this question. These notes were past due and dishonored long before that agreement was made, as they matured in January, February, March and April, 1850. The defendant in June, 1852, being already discharged of his conditional obligation as endorser, could not be made absolutely liable by any thing in that agreement. Hor is that agreement a general assignment of Carew’s property, but only of certain specified property. (13 Barbour, 163, 165, 166; Bruce v. Lytle) 4. Nor does the obligation of the defendant, to release Carew, relate to any transactions except to those of the firm and firms, containing Hubbard or Carne; and a mere promise to the maker of a promissory note to indemnify him, does not change the contract of the endorser with the holder of such note.
VI. If any action upon these notes would lie against the defendant, by reason of any of the alleged copartnerships or transactions with Carew, or with Carne, Carew & Co., the present action must fail, for defect of parties. If the defendant is alleged to be a joint maker with Carew, as a member of the supposed firm of J. L. Carew, then Carew must be joined as co-defendant. If the de *147 fendant is alleged to be a joint maker with Garew, Game, and Hubbard, as a member of the firm of Carne, Garew & Co., then Garew and Hubbard must be joined as co-defendants. This objection was duly taken by the answer, and on the trial.
VII. On the whole record, judgment should be given for the defendant, and the complaint should be dismissed, under the stipulation contained in the case.
By the Court. Bosworth.—The
defendant is the payee and endorser of four several promissory notes made by I. L. Garew, and dated, “ Detroit, April 2d, 1849.” Each is for the sum of $740, with interest. All are of precisely the same terms, except that one is payable nine, one ten, one eleven, and the other twelve months after date. This action is brought on the three notes which matured last.
Each note, on the day it matured, was duly presented for payment, and payment of it was demanded and refused. Each note was, therefore, properly and duly protested. The important question is, was sufficient notice thereof given to the defendant, as endorser, to charge him ?
A notice, in each case, was mailed on the proper day, accurately directed, and was actually received by the defendant.
The notice, inasmuch as it stated that the note to which it referred was “ duly protested for non-payment, on the day that the same became due,” was sufficient to charge the endorser, if good in other respects. That has been finally and definitely determined, in an action between these parties upon the notes in question. {Cook v. Litchfield, 5 Seld. 279-291.)
The notes, after being endorsed by the defendant, at Detroit, were returned by him to the maker, who first negotiated them in the City of New York, by delivering them there to one Ryckman, who endorsed them to the plaintiff. The endorsements receiving their first vitality as contracts from the negotiation of the notes by the maker in New York, the law of New York must determine the sufficiency of the notice in each case.
We start, then, with the propositions duly established, that there was a valid presentment and protest of each note, and that a notice was served in time to charge the endorser, and that each notice was sufficient to inform him, that the note to which it re *148 ferred had been, presented for payment on the day it became due, at the proper place, and that payment had been refused on being then and there demanded.
It has already been decided by the Court of Appeals, that in determining the sufficiency of the notices from their contents, and in view of the mere fact, that there were four such notes as have been described, the notice first served was sufficient to charge the defendant, as endorser of the first note, (meaning by first note, the one which first matured,) and that neither of the-other notices was sufficient to charge him as endorser of either of the other three notes.
The Court of Appeals, in the opinion delivered, say that the notice first served was sufficient to charge him as endorser of the first note, because it informed him that a note, made by J. L. Carew, for $740, with interest, dated April 2, 1849, and endorsed by him, was, on the day the same became due, duly protested for non-payment—only one of the four had fallen due at the date of the notice. “ The notice pointed out with sufficient certainty which of the four notes had then been dishonored, and distinguished it from the other three, by reference to the time of its maturity” (5 Seld. 287).
This being so, the defendant, when he received the second notice, dated on the day when the second note matured, knew that it did not refer to the third or fourth note, because neither of them had then become due. Yet it notified him of the dishonor of a note which had become due, and by language which informed him that it did not refer to the third or- fourth note.
It, therefore, could only refer, either to the first or second note. He had received, a month previously, due notice of the actual dishonor of the first note: the date of the second notice was one month subsequent to the day of the maturity of the first note, and was on the day the second note matured.
If he knew that the second note matured on the day of the date of the second notice—if he was bound to infer or suspect that the holder of the notes, in causing the second notice to be sent, would act with a view to protect' his interests, and that the notary, in mailing it, was acting in the discharge of his duty—it is difficult to conceive that the defendant could have imagined that it was sent to inform him of the dishonor and due protest *149 of the first note. To indulge in such a conjecture, he must be allowed to forget, or regard it as immaterial, that the first note had been didy dishonored, and that he had been duly notified of it, a month previously: as a notice of the dishonor of that note, it was unnecessary, even if mailed in time, and wholly nugatory, by reason of being mailed too late, to charge him, by force of such notice, as endorser of the first note.
The marginal entries on the second notice, viz.:—
“ $43.60 interest.
“740.00
“$783.60,”
would naturally, as it seems to us, be understood to mean, that interest on the note protested, at the time of the protest to which the notice referred, was $43.60: so construed, it would clearly identify the second note, as the one to which the second notice referred, because no other note of the series could be protested on the day of its maturity, and have, on the day of its maturity, that amount due, for interest accrued.
But the Court of Appeals has determined, that these facts— however persuasive they may be to convince, that the endorser must have known that the second notice referred to the second note—are not, of themselves, sufficient to make it a good notice of the dishonor of the second note, or to charge the defendant, as endorser of it.
The features in the action, as now presented, which distinguish it from the action as it was presented when before this Court, and the Court of Appeals, as reported in 5 Sand. S. C. R.; 330, and 5 Seld. 279, are these:—
On the trial of the present action, Ch. Justice Oakley, before whom it was tried, submitted to the jury, with respect to the second notice, this question:—
“Did the defendant, when he received the notice dated 5th February, 1850, know that it was intended to inform him of the presentment and non-payment of the note dated April 2d, 1849, payable in ten months ?”
The jury answered, “Yes.”
A question in like form, and adapted to each of the two other notices, by describing its date, and the notes maturing on their respective dates, was submitted to the jury, and they answered to each question, “Yes.”
*150 The defendant’s counsel objected to the submission of each of these questions to the jury, on the ground, that the cause presented no such questions for the jury, and that there was no evidence authorizing a verdict for the plaintiff on such questions, and excepted to the submission of the questions. He also asked the Court to charge the jury, that there was no evidence authorizing a verdict for the plaintiff on such questions, and excepted to the refusal of the Judge to so instruct the jury.
The plaintiff’s counsel contends, that it is competent for a plaintiff, when the terms of a notice are equivocal on their face, in such sense, that they do not necessarily identify the note to which it refers, to prove extrinsic facts known to the defendant at the time, in the light of which the notice may be deemed to have informed him of the precise note to which the notice referred; and that, on such facts, and in connection with the notice, it may properly be left to the jury to determine, whether the endorser of the note knew, on receiving the notice, to what note it related.
He also insists, that such extrinsic facts were proved, on the trial of this action, as made the submission of the particular questions put to the jury, in this case, proper.
The latter proposition is denied by the defendant’s counsel. He also insists, that there is no conflict of evidence, in respect to the matters called extrinsic facts, and that, in such a case,'the sufficiency of the notice is a question to be decided by the Court alone, and not by a jury.
If extrinsic facts may be proved to aid a notice, which is defective, because not sufficiently full in its details, and if such facts were proved, in this case, as leave no reasonable doubt that the endorser, on receiving each notice, knew that it referred to the note maturing on the day the notice bears date, a new trial should not be granted, because the question was left to the jury, instead of being decided by the Court, if the jury have determined it, as it was the duty of the Court to have decided it. (Miller v. The Eagle Life and Health Insurance Co., 2 E. D. Smith, 287.)
We will first consider the question, whether extrinsic facts, known to the endorser, may be proved for such a purpose; and, next, the nature and effect of those proved and relied upon, in *151 this action, as being sufficient, to make the notice operate as a good notice to the endorser.
We start with the proposition, settled, in reference to these notices, that, in an action upon either note alone, the notice of protest, dated on the day such note matured, would be sufficient, of long as it was not made to appear that any other note, of that date and amount, had been made by J. L. Carew, and endorsed by the defendant.
It is only by proving the fact, that there was another note, or that there were other notes, outstanding, to which the terms of the notice would be as applicable as to that maturing on the day of the date of the notice, that such notice would be rendered so equivocal, as to be insufficient.
If, therefore, extrinsic facts may be proved, to establish the insufficiency of a notice which would be held sufficiently definite, if these facts had not been proved, it is quite clear, that the effect of such facts may be obviated, by the proof of other facts known to the endorser, which establish, that the notice must have informed him of the particular note to which it referred.
In Cook v. Litchfield, (5 Seld. 289,) the Court say, that, “ in determining whether the description of the note or bill is sufficient, the circumstances of the case, and the defendant’s knowledge of these circumstances, may be taken into consideration; and, therefore, where the notice to the drawer of a bill of exchange, was, that his draft on A B was dishonored, the notice was adjudged to be sufficient, until it was shown, that there was another bill, drawn by the defendant on A B, for which the one in question might be mistaken.”
But the adjudged cases have gone so far as to hold, not only that a notice, which fails to give such details of the note as will, of themselves, identify it, clearly and distinctly from all others, may be sufficient, when construed in the light of facts existing at the time, and known to the defendant; but also, that a notice, erroneous in some of its particulars—and, therefore, calculated to mislead to such extent as errors of that character might tend to produce that result—would be sufficient, when construed in the light of facts which demonstrated, with reasonable certainty, that the endorser knew what note it was to which the note referred, notwithstanding, in some particulars, the notice had misdescribed it.
*152 The Cayuga Co. Bank v. Warden & Griswold, (1 Com. 413, and 2 Seld. 19,) is a case of the latter description.
We think, that extrinsic facts, known to an endorser at the time he receives a notice, may be shown, and that the Court, in' construing the notice and determining its sufficiency, may construe it in the light of such facts; and that if, on being thus construed,’there can be no reasonable doubt that the endorser knew that the notice related to the note maturing on the day such notice bears date, the notice must be held sufficient. This doctrine is not only not repudiated in Cook v. Litchfield, (5 Seld. 289,) but is expressly asserted, and was a point, in judgment, in the Cayuga Co. Bank v. Warden & Griswold.
The only question of substance left, relates to the extrinsic facts proved, and the light they shed upon the terms of the several notices of protest, and the sufficiency of the notices, when construed, with reference to those facts. "
I think we may start with the assumption, that slight circumstances, known to the defendant at the time each successive notice was received, to point it to the note maturing on the day such notice bears date, are all that can be required in a case like the present.
The notice first received, informed him of the dishonor and protest of the first note, (the one at nine months,) and identified and distinguished that note, as the one of the four which had been protested, and to which that notice related.
The notice secondly received, was dated on the day the second note (the one at ten months) matured, and was mailed and postmarked on the next day thereafter. It informed the endorser of the due protest of a note, on the day the same became due, "and, therefore, informed him it did not relate either to the third or fourth note.
There being, in the margin of the notice, the figures and words,
“ $43.60, interest.
“ 740.00"
“ $783.60,”
it might, as it seems to us, be reasonably construed to mean, that interest on the note, so protested, at the time of such protest, and which was the day the note referred to in the notice became due, amounted to $43.60. That could only be *153 true of the second'note, and, so construed, the notice would distinguish and identify that note from either of the others.
The third notice, on a similar construction, would identify the note at eleven months as the one to which it referred, and of the dishonor and protest of which it gave information.
In the Cayuga Co. Bank v. Warden, supra, the notice of protest, in the body of it, described the note as one “ for three hundred dollars.” It was, in truth, a note for $600. In the margin of the notice were the figures “ 600”, without any prefix, except the character “$,” or any addition to indicate for what purpose they were written, or to what they related.
Jewett, J., in 1 Coms. 418, says:—“ Now, having the accessary facts, namely, that this note was the only note in this bank drawn by S. Warden, and endorsed by the defendants, and the intimation conveyed by the figures “600,” upon the margin of the notice, who can doubt but that this notice conveyed to the minds of the defendants the information that this identical note had been dishonored, although it misdescribed the note, as it respects the sum for which it was made, in the body of it? The defendants, knowing the facts stated, on the receipt of this notice could not, as it seems to me, fail to be apprised, by it, that this particular note had been dishonored.”
In the same case, when again before the Court of Appeals, (2 Seld. 26,) Gardner, J., said: “ So the design of the notary, in this case, was to inform the endorser of the dishonor of a particular note. Whether he has succeeded, depends, in like manner, upon the terms of the notice. If the subject is there described so as to be identified, upon proof of extrinsic facts, which, in the language of lord Coke, 'stand with the notice,’ the object will be accomplished, although the description may not be true in every particular; and the defendant would be bound by it, although as dull of apprehension as his counsel proposed to prove him.”
- So it may be said, in this case, with much force, that the defendant knew he had endorsed a note made' by the person described as maker, and of the date and amount named in the notice, and maturing on the day the notice bore date.
Each notice informed him that the note protested was dishonored on the day it matured. And the intimation conveyed *154 by the figures in the margin of the 2d and Sd notices was, that the note so protested was for the sum named, and that the interest on it, at the time of such protest, was the sum so stated in the margin. It seems to us, that he could not suppose either of these notices referred to a note previously protested, and of which protest he had been duly notified.
On this trial, it appeared that the defendant received the notices, and gave so much attention to them that he preserved them and produced them at the trial. It thus appears that he received as many notices as he had endorsed notes; that each successive notice so received was dated and mailed on the proper days to protest each successive note as it matured, and to mail the notice thereof, so as to charge him as its endorser.
Whether he preserved them all, so as to be able to demonstrate, on the trial of an action against him, if sued as endorser of the notes, that he could not tell to what note either of the notices, except the first, related, or because he had no doubt to which note each notice referred, and also had an interest in the notes being paid, beyond that arising from the fact of his having endorsed them—different minds may, possibly, differ in their conclusions.
The facts proved show that the consideration of the notes was a sale of Hops, by Ryckman, (to whom the notes were delivered,) to J. L. Carew, for, and which were used in, prosecuting the business of the Detroit brewery. That at the time the hops were purchased and so used, the defendant and Carew had such an interest in the business of the brewery as would make them liable, as partners to Ryckman, in an action for hops sold and delivered, though Ryckman does not seem to have been informed of that fact.
So long as a cause of action, based on a contract for the sale and purchase of the hops, would not be outlawed, and, by returning the notes after they had matured, the defendant and Carew might be sued, as partners, on such contract; the defendant, as a person originally liable to Ryckman, for the consideration of the notes, had an interest in knowing whether they were subsequently paid.
The notices were convenient memoranda to remind him, both of his liability, as endorser, and of the possibility of his being charged as a party, in law, to the contract for the sale and purchase of the hops.
*155 They might, also, have been, preserved, in the expectation that he would be sued, as endorser, in the Courts of Michigan, in which State he resided, and with the confident expectation, that, although each notice informed him, accurately, that it referred to the note maturing on the day of its date, yet, they would be held insufficient by the Courts of that State, on the mere ground, that they did not, in terms, state, that the notes were presented for payment at the bank at which they were made payable, but only stated, that the notes were “duly protested for non-payment,” on the day that the same became due.
But he had a still further interest in the payment of these notes by Carew.
By an agreement, dated the first of January, 1849, prior to the date of the notes, but subsequently to the purchase of the hops, a partnership was formed between Carew and the defendant, and Geo. W. Carnes and B. Hubbard, all, then, of Detroit, for the prosecution of the brewery business.
The property and assets of the business, in which the defendant was interested with Carew, were transferred to the new firm, and, in consideration of that, among other things, the new firm were to issue their notes, to the amount of $10,000, and apply the same, or the avails thereof, to the payment of outstanding liabilities against the old concern of Carew.
But a small portion of that amount was so issued or applied. Had they been issued and applied to the amount agreed upon, the defendant would have had a pecuniary interest in their application to the payment of the notes in question, and to the absolute extinguishment, by such means, of all personal liability, as a partner of Carew, to Ryckman, for the hops, for which the notes had been given.
We think, on reading each notice, in the light of these facts, that the defendant, as he received each successive notice, instead of being in doubt as to the note to which the notice referred, must have understood it to mean, that a note, maturing on the day the notice bore date, had been on that day protested, and that the holder looked to him for the payment.
Why is an endorser, who is notified of the dishonor of a note for $175, when the note endorsed by him was for $200, or who is notified of the protest of a note for $300, when the one he had *156 endorsed was for the sum of $600, held to be concluded, as to the sufficiency of the notice, on its being proved, that he was endorser of only one note, made by the maker named in the notice, or payable at the place where the notice states the one so protested to have been payable ?
Proof of such a fact, does not enable the Court to give any meaning to the terms of the notice differing from their obvious import, or render their description of the note more accurate.
The object of notice is, to inform the party to whom it is sent, that payment has been refused by the maker, and that he is held Hable. Hence, such a description of the note as will give sufficient information to identify it, is all that is necessary.
It cannot be maintained, that every variance, or omission of a descriptive particular, however immaterial, is fatal. It must be such a variance, or omission, as that the notice will convey no sufficient knowledge to the party of the particular note which has been dishonored. If it does not mislead him—if it conveys to him the real fact, without any doubt—the variance or omission cannot be material, either to guard his rights or avoid his responsibility. (Dennistoun v. Stewart, 17 How. U. S. 606; Bank of Rochester v. Gould, 9 Wend. 279; Snow v. Perkins, 2 Gibb’s Mich. 238; Sasscer v. The Farmer’s Bank, 4. Md. 400.)
Hence, when an endorser receives notice, that a note, endorsed by him, and made by a person who is named, and payable on a specified day, was, on that day, duly protested, he is bound to understand, if he has endorsed but one note, made by such person, that such note has been dishonored, although the notice misdescribes the note, either by stating the note to be larger or smaller than the one he had actually endorsed.
He is not at liberty to regard the notice as telling the truth in every particular, and claim exemption from Hability on that ground, so .long as it states enough to enable him to determine, with the aid of other facts, then known to him, that it refers to the note which it was designed to inform him was dishonored. (Mills v. The Bank of the U. S., 11 Wheat. 376; Bank of Alexandria v. Swan, 9 Peters, 33.)
In the present case, the second notice, for instance, states no one particular inaccurately, and, therefore, was not calculated to *157 mislead, by stating the note protested to be different, in any of its terms, from the note as it actually reads.
The only defect which can be pretended is, that it did not enable the defendant to know whether it referred to a note maturing on the day of the date of the notice, or to one maturing a-month prior thereto.
To this, we think, it may be replied, you could not have supposed it referred to a note maturing one month prior to the date of the notice, because you knew that was dishonored on the day it fell due, and notice thereof was mailed to you the next day, which notice you received, and preserved, and now produce. You also knew, that such a note, and only one such note, matured on the day the notice is dated.
The plaintiff could have no motive to cause a notice to be sent a month after the protest of a note, in respect to which he had done regularly, at the time, every thing essential to charge you as endorser. The notary must be deemed to have been acting in the discharge of his duty, and designing to give you notice of acts which would create a liability on your part as endorser. By referring his notice to the note maturing on the day the notice was dated, he was doing that which was proper and necessary to be done, to fix your liability as endorser of a note maturing that day, and so far as appears, the only one which then matured.
The entries on the margin of the notice, might, reasonably, have been understood to mean, that the sum there stated, as the amount of interest due on the note protested, was the amount due on the day of its protest, and not the amount due one or two months after it was protested.
The statement, as to the amount of interest due, thus understood, could not apply to any note except one falling due on the day the notice is dated.
The same reasoning and considerations apply, to the third notice, with as much force as to the second.
We think the facts proved on this trial lead, irresistibly, to the conclusion, that the defendant could not have been misled nor left in doubt as to the note to which either notice referred. On the contrary, he must have believed and understood, that each successive notice received, was designed to refer to, and to inform him of the dishonor of the note maturing on the day such notice *158 was dated, and that the holders looked to him for payment thereof.
If, on such a state of facts, the Court should determine what knowledge the notice, in the light of such facts, conveyed to the endorser, instead of submitting it to the determination of a jury, the defendant has not been prejudiced by such submission, if it was the duty of the Court to have held the notice sufficient.
The Court, by submitting the question to the jury, must have deemed the evidence sufficient to justify a verdict that the defendant knew, what they have found he knew.
It has done no damage to the defendant, that their verdict shows that, in their judgment, he knew to what note each notice related.
If it was a question of law, to be decided by the Court, on evidence not conflicting, whether the notice was sufficient, the case is properly before the General Term, on a verdict subject to its opinion on questions of law.
We think either notice was sufficient, when construed in the light of all the facts proved, to inform the endorser that it referred, and was intended to refer to, and inform him of the dishonor of a note maturing on the day such notice was dated, and that the holder looked to him for the payment of such note. And that the jury having found, as it was the duty of the Court to have decided, (if the question is to be treated as one to be determined by the Court only;) the defendant was not, in any way, prejudiced by the submission to the jury of the questions, on which they passed, by their verdict.
A judgment must be entered in favor of the plaintiff on the verdict.