The bequest of $1,000 to the Unitarian Society of Flushing is void.

Let decree be made, directing the distribution of this bequest to the residuary legatees.

Decreed accordingly.

---

THE GERMAN-AMERICAN BANK OF ROCHESTER, Respondent, *v.* GEORGE E. MILLIMAN, Appellant.

(County Court, Monroe County, March, 1900.)

Bills and notes — Maker has until the close of banking hours to pay his note — Protest fees — Interest — Costs.

The maker of a promissory note has until the close of the banking hours, of the bank where the note is made payable, in which to pay it, and if before the close of such hours he deposits money in that bank sufficient to cover the note, demands of payment (made by the holder) earlier on the same day are premature. He cannot thereafter be lawfully charged with fees of a protest made before the close of the banking hours, nor with interest after maturity where his account was kept good until action brought and he thereafter immediately paid the amount due into court and pleaded tender, nor is he chargeable with costs of the action.

APPEAL from a judgment in favor of plaintiff, rendered by the Municipal Court of the city of Rochester, May 5, 1899.

George E. Milliman, in person (F. E. Drake, of counsel), for appellant.

George F. Yeoman, for respondent.

SUTHERLAND, J.    This action was brought upon a promissory note dated January 6, 1899, made by the defendant, payable three months after the date thereof, to the order of W. E. Williams, at the Central Bank, Rochester, N. Y., for thirty-nine dollars and interest.    Before maturity the note was indorsed by Williams, the payee, and transferred to the plaintiff.   The day the note became due (April 6, 1899), shortly after ten o'clock, a messenger from the plaintiff presented the note at the Central Bank and requested payment, which was refused because the defendant's account was not good.    The banking hours at the Central Bank are from ten A. M. until four P. M.; the banking hours of the plaintiff are from ten A. M. until three P. M.    At about half-past three of the afternoon of the same day the assistant cashier of the plaintiff, who is a notary public, presented the note at the Central Bank and demanded payment, which was refused because the defendant's account was not good.    The notary immediately protested the note, and about four o'clock mailed notices of protest to the indorser and maker.    After the notary had presented the note and payment had been refused, Milliman deposited in the Central Bank cash, and a check which was treated as cash sufficient in amount to make his account good for the note in suit.    About five minutes before four o'clock Milliman deposited enough at the Central Bank to pay the note, and then went to the German-American Bank and told its cashier that he had made his account good; the cashier told him that as the note had already gone to protest, he would have to pay the face of the note and interest, and one dollar and fifty cents protest fees, which protest fees the defendant declined to pay.   The correct amount of the protest fees was one dollar and fourteen cents.

This action was commenced April 15, 1899.    The defendant's account remained good for the amount of the note from five minutes of four P. M. of April sixth until the morning of the day when the summons was returnable in this action, when defendant with-

drew from the bank the amount of the note, with interest up to the date of its maturity, which amount he at once paid into court when he filed his answer pleading a tender.    The Municipal Court gave judgment for the face of the note and interest to the date of the judgment, besides one dollar and fourteen cents protest fees and the costs of the action.

The defendant insists that by making his account good for the note and accrued interest, before the close of banking hours at the Central Bank, he fulfilled his contract, and that the two demands and refusals which had been made earlier in the day did not put upon him the duty either of making a tender of the amount at the German-American Bank, or of paying the protest fees, and that the judgment appealed from is excessive in awarding plaintiff interest from the maturity of the note to the date of judgment, with protest fees, and that defendant, not plaintiff, should have been awarded costs.

The respondent contends that it was not necessary for the notary to wait until the close of banking hours at the Central Bank, but that the note having been once presented there for payment within banking hours, and payment being refused because of the want of funds, the note was thereby immediately dishonored, and was properly protested before four o'clock, and that if the maker desired to fulfill his obligation after one presentment and refusal, he was bound to bring the money to the plaintiff's bank and there tender the amount due, with the protest fees.

The question thus presented is not free from doubt, and there is no reported case in this State which is precisely analogous to the one at bar.    Numerous expressions may be found, however, in the opinions of the courts pronounced during a long series of years, which, although *obiter dicta*, deserve respect and serve to indicate with some degree of certainty the views of the judges on the point involved here.    In Etheridge v. Ladd, 44 Barb. 69, decided in 1865, the Supreme Court held that where a note was made payable at the store of one Child, and a demand was made between eight and nine A. M.; during the ordinary business hours at the store, the holder was at liberty at once to treat the note as dishonored and immediately give notice of nonpayment to the indorser, without waiting until the close of business hours of that day.    Judge Bockes, in the opinion, refers to the general rule " that if payment be refused during the last day, the holder may

County Court, Monroe County, March, 1900.    [Vol. 31.

give notice of its dishonor; yet if payment be subsequently made on that day, such notice becomes of no avail. True the maker has the whole of the last day of grace within which to pay. But after due demand and refusal, followed by notice to the indorser, the maker, if he wishes to make payment, must seek the holder for that purpose." He recognizes, however, that more latitude is allowed the maker of a note payable at bank than is permitted the maker of a note payable at some other place, for at page 72 he says: " He (the holder) was not required to remain all day at the place to receive payment; nor was he bound by any custom — as perhaps he might have been had the note been payable at a bank — to leave the note until the close of the day. But his duty was at an end when he made presentation of the note for payment, at the proper place, at a reasonable hour, followed by immediate notice to the indorser." Again, at page 73, he says: " There is a custom at banks which gives to the maker all of bank hours within which to pay, and in order to meet this custom, the note, when payable at a bank, is usually left there, and demand is made at the close of the day."

In Merchants' Bank v. Elderkin, 25 N. Y. 178, decided in 1862, the defendant was an indorser of a promissory note payable at the Troy City Bank. The plaintiff sent the note, which it had discounted, to its correspondent, the Commercial Bank, of Troy, for collection. On the last day of grace the Commercial Bank sent the note to the Troy City Bank, whose banking hours closed at two P. M. At fifteen minutes before two, there being no funds to meet it, the Troy City Bank sent the note back to the Commercial Bank, whose cashier, being a notary, protested the same and gave notice to the indorsers. No funds had been deposited in the Troy City Bank to pay the note when the bank closed at two. No formal demand of payment was made. The indorser was held liable. The opinion does not state whether the note was actually protested before two o'clock, but the language used makes that the natural inference. It would seem from the opinion that the lack of formal demand was the main point under consideration; but the case must be considered as authority for the proposition that where no funds are placed in the bank at which the note is payable, before the close of banking hours, a presentment on the day of maturity, during, but before the close of, banking hours, is sufficient to charge the indorser. The learned judge writing the opin-

ion was careful to state, however, as follows: " And whatever questions might arise, had the drawer, just before two o'clock, placed at the Troy City Bank funds to meet the note, we have no such case before us.   *   *   *   When a case comes before us, where there has been a note protested, during business hours, in such a way that the indorsers might be prejudiced, or that the settled rules of law were clearly infringed, it will be time enough to deny a plain right on a technicality.   This is not that case.   At two o'clock there were no funds to meet the note; and nobody has been injured by the protest."   Reference is made in the opinion to the case of Gillett v. Averill, 5 Den. 85, in which latter case, in the opinion of Justice Whittlesey, written in 1847, it is said:   " It is understood to be the custom of banks holding promissory notes, payable at their own counter, to wait, on the day of the maturity of the note, until the close of business hours, and then  if the maker has no funds, to give notice of nonpayment, without making any other demand of payment."   This custom is sanctioned by the judicial decisions.   In First National Bank of Groton v. Crittenden, 2 T. & C. 118, decided in 1873, an action upon a promissory note payable at plaintiff's bank, the indorser asked for a nonsuit on the ground that protest was not made on the last day of grace, but on the following day, and that the notice of protest was defective in form.   No funds were provided for its payment at any time during the day of its maturity, and no formal demand for payment was made.   Judge Potter, in his opinion, at page 125, says: " I understand the law to be that it was the drawer's duty to be at the bank within the usual hours of business on the last day of grace to pay the note; that he has the whole period of the usual banking hours to pay it, and if he does not pay it within those hours, it is equivalent to a demand and refusal on his part."   In Hills v. Place, decided by the Commissioners of Appeals in 1872, 48 N. Y. 520, the note sued on was payable at the Hanover National Bank and held by the plaintiff.   On the day of its maturity it was presented at eleven A. M. and not then paid because there were no funds.   The banking hours closed at three P. M.   The maker of the note, after it was presented at the bank, made his account good and instructed the cashier to pay the note on presentation. The note was not subsequently presented for payment either at the bank or to the defendant.   Evidence was received on the trial that the custom of New York banks was to present notes for

payment between ten and three, and if the note is not paid on first presentation, to present it again at the close of banking hours, and that a man has until three o'clock to pay his note, which cannot be protested until after that time.   Suit was brought against the maker, who pleaded a tender; but the plea of tender was held insufficient, because the money was not brought into court to keep the tender good; for which reason the court said it was not necessary to consider the effect of the presentment of the note and refusal to pay it before the deposit of the funds to meet it.   There was no indorser in that case and no protest was necessary.   Speaking of the custom of the banks referred to, the court said: "It evidently does not affect the maker's liability.   It only shows that the usual banking hours are allowed him to make his payment, and that his note cannot be protested until they have passed."   In Osborn v. Rogers, 112 N. Y. 573, an action in which the defendant had suffered default, a stipulation had been made that proceedings should be stayed and promissory notes given to the plaintiff, payable at the Tradesman's National Bank, and that if the notes were paid promptly at maturity, no judgment should be entered.   "But in case the defendant shall make default in the payment of any one of the said notes, according to its terms, then, immediately upon such default, plaintiffs shall be at liberty forthwith to enter judgment."   At the maturity of one of the notes and within banking hours, it was presented by plaintiff at the bank for payment, and payment refused; shortly after banking hours, payment was again demanded by a notary, and, being refused, the note went to protest, and on the same day plaintiff entered up judgment in the action.   The case was in the Court of Appeals on an appeal from an order denying a motion to set aside the judgment, the appellants taking the position that the maker of the note had all of the last day to make payment.   But Judge Danforth, in discussing the stipulation, says:   "Payment of the note according to its terms means, in substance, that the defendant said, 'If you will suspend your suit until October seventeenth, I will meet you at the bank on that day, between the hours of ten and three, and there pay that portion of the money you require.   If I do not, you can proceed in the action.'   I suppose no one would doubt that upon default of defendant in so doing, the plaintiffs might, immediately after the hour of three, enter their judgment."   The tenor of the opinion in Osburn v. Rogers seems to imply that presentation or demand

at the bank where the note was payable earlier than three would not have put the maker in default.

In none of these cases was the precise point adjudicated which is involved in the case at bar, but the numerous *obiter dicta* of these learned jurists command attention so far as they recognize an exception to the general rule, founded on bank custom and common usage, giving the maker of a note payable at a bank until the close of banking hours to deposit money there to meet it, notwithstanding a presentation by the holder and refusal earlier in the day.

Some of the text-book writers say this bank usage must be recognized and enforced by the courts. Mr. Tiedman, in his work on "Bills and Notes" (published in 1898, which contains a discussion of the Negotiable Instruments Law, passed in New York in 1897), at section 121 says: "The acceptor or maker has the whole day in which to make payment. But a second demand cannot be required of the holder. If the paper is payable in a bank, it would seem to be necessary to keep the bill or note at the bank, so that the acceptor or maker may make payment there at any time during the business hours of the day. If it is payable at the place of business or residence of the obligor, he must seek the holder, in order to make payment, where he fails to pay, when the presentment was made." Mr. Tiedman refers, in a note to this section, to Harrison v. Crowder, 6 Smedes & M. (Miss.) 464. In that case it was affirmatively proven upon the trial that the bank where the note was payable had a custom by which makers had until the expiration of banking hours to pay, and that no note was considered dishonored if payment was made at the last moment. The court there say: "The law undoubtedly is, that by making a note payable at a particular bank, the parties are presumed to consent to be governed by such customs as may prevail in the bank, with regard to making demand of payment. A greater strictness must be observed in making these constructive demands than is necessary in personal demands. A personal demand may be made at any time during the third day of grace, but a constructive demand at bank, having regular business hours, must be made at the close of the business hours; for the maker has until that time to deposit the money for the payment of the note." The same court, in a previous case (Planters' Bank v. Markham, 6 Miss. 397), said, where bank usage had been proven: "It follows as a necessary con-

sequence of this doctrine, that a note or other security thus payable at a bank cannot be considered as due until the expiration of the hour allowed for payment by the invariable usage of the bank, and that it must be left at the bank until the completion of the allotted period."

The Mississippi cases referred to are cited in Daniels on Negotiable Instruments, par. 600, as authority for this proposition, approved by the author: "Where, by usage of the bank at which the instrument is payable, the payor is allowed until the expiration of banking hours for payment, a demand made before that time, unless the instrument continues in bank until the banking hours have expired, is sufficient." Edwards on Bills and Notes, § 680, says: "It is understood to be the custom of banks holding bills or promissory notes payable at their own counter to wait, on the day of the maturity of the note or bill, until the close of business hours, and then, if the maker or acceptor does not come to pay and has no funds, to give notice of nonpayment, without making any other demand." In 1 Parsons on Bills and Notes, p. 417, the learned author says: "It is the usage of all our banks to consider notes and bills discounted by them, or left with them for collection, whether payable at the bank or generally, as dishonored at the close of business hours, which are then the banking hours, on the day of maturity. And the paper is then handed to the notary for demand and protest. And undoubtedly this usage would determine the rights and obligations of the parties in any case to which it applied." In Boston Bank v. Hodges, 26 Mass. 420, Chief Justice Parker, in discussing a suit brought upon a note payable at a bank before the close of banking hours, says: "But the bank has substituted a usage of its own, according to which a note is not considered dishonored until after the bank is closed, on the last day of grace."

*Obiter dicta* may be found in reported cases upon the other side of the question. McFarland v. Pico, 8 Cal. 626 (opinion written by Judge Field); Thorpe v. Peck, 28 Vt. 127. But in McFarland v. Pico the note was not payable at the bank, and in Thorpe v. Peck no money was ever put in the bank to meet the note; and the note was protested about the time the bank closed, presenting facts quite similar to those in Merchants' Bank v. Elderkin, 25 N. Y. 178, *supra.*

In the case at bar the teller of the Central Bank was called as

a witness and gave this testimony: " Q. At what hour does the Central Bank protest promissory notes in the possession of the bank and payable at the Central Bank? A. At four o'clock."

But the claim is made in this case, on behalf of the plaintiff, that the Negotiable Instruments Law of 1897 has enacted that a demand made at the bank where the note is payable at any time during banking hours, on the day of maturity, is sufficient; and that the note may be protested at once if not immediately paid, and the protest fees charged to the maker of the note, and that the maker must seek the holder of the note after such presentment to make a legal tender of the amount due even before the bank closes. But I do not think the statute discloses any intent to modify existing rules in this respect.

Section 130 provides that presentment for payment is not necessary in order to charge a person primarily liable, and if the note is payable at a special place, the ability and willingness to pay it there at maturity are equivalent to a tender of payment. Section 131 provides: " Presentment of an instrument not payable on demand must be made on the day it falls due." Section 132: " At a reasonable hour on a business day." Section 133: " At the place of payment specified in the instrument." Then comes section 135, which is relied upon as establishing the rule contended for by plaintiff: " Where the instrument is payable at a bank, presentment for payment must be made during banking hours, unless the person to make payment has no funds there to meet it at any time during the day, in which case presentment at any hour before the bank is closed on that day is sufficient." In my opinion it was not the intention of the Legislature, by section 135, to change the law, as it stood up to that time, giving the maker of the note all of the banking hours to meet his note payable at the bank. The language of section 135 is taken almost word for word from the opinion of the Court of Appeals in Salt Springs National Bank v. Burton, 58 N. Y. 430, in which case no funds were left in the bank to meet the note, and the note was not actually presented during banking hours but an hour after, when the holder was admitted into the bank where he found the cashier, of whom he demanded payment, who refused, on the ground that no funds had been left with which to pay. The indorser defended, upon the ground, that this presentation was insufficient to hold him; and that was the whole controversy. The court was not called upon

to decide at what time during banking hours presentation should be made. And section 135, it seems to me, was incorporated into the Negotiable Instruments Law, not for the purpose of declaring that presentment at any time during banking hours is sufficient, but to codify the rule announced by the court in Salt Springs National Bank v. Burton, that even though no demand be made during banking hours, if no funds are left to meet the note, a demand will hold an indorser, if made upon a bank officer at the bank on the same day before the outer doors are closed. Section 132, requiring presentment in general to be " at a reasonable hour on a business day" is intended to prevent demands at unreasonable hours, for instance, one A. M., on the day of maturity. It does not declare what is a reasonable hour, and, unless the maker has until the close of banking hours to make his deposit, any time during banking hours must be considered reasonable. Fifteen minutes after the bank opens is as reasonable time for presentment and protest as fifteen minutes before the bank closes. This section works no change in the law.

Section 143 says: " The instrument is dishonored by nonpayment when: 1. It is duly presented for payment and payment is refused or cannot be obtained." That section, however, is entirely consistent with the proposition that a note, payable at a bank, is not dishonored, provided funds to meet it are deposited before the close of banking hours.

Section 144 says: " Subject to the provisions of this act, when the instrument is dishonored by nonpayment, an immediate right of recourse to all parties secondarily liable thereon, accrues to the holder." This section is not inconsistent with the defendant's position, because the note is not dishonored absolutely, if the deposit is made before the close of banking hours. If section 144 is to be construed as applying to notes payable at a bank, it might be argued with much force that the Legislature intended to permit an indorser to be sued on the day the note falls due, and even before the close of banking hours, provided an early demand be made. I hardly think any such startling innovation was intended. Smith v. Aylesworth, 40 Barb. 104.

Section 173 says: " Notice (of protest) may be given as soon as the instrument is dishonored." In Crawford's Annotated Negotiable Instruments Law, the editor says, in a note to this section: " The holder need not wait until the close of business hours, but

may send notice at once," and cites Bank of Alexandria v. Swann, 9 Pet. 33; Lenox v. Roberts, 2 Wheat. 373; and Ex parte Moline, 19 Vesey, 216. But I do not think the learned author, in this note, intended to include promissory notes payable at a bank; for the cases cited by him are quite inapplicable to such paper.

In Bank of Alexandria v. Swann, 9 Pet. 33, the question was as to the form of the notice of protest, and as to whether notice of protest should have been mailed on the evening of the day of the maturity of the note, or the following day; in fact, the note in that case was in the bank during the whole of the banking hours, and was not protested until after the bank closed. The court does not intimate that notice of protest can be sent out on such a note before the close of banking hours on the day of maturity. In Lenox v. Roberts, 2 Wheat. 373, the note was not payable at the bank, and there is nothing in the opinion or decision touching the point at issue here. In Ex parte Moline, 19 Vesey, 216, the acceptor of a bill of exchange, when the bill was presented to him at eleven o'clock on the morning of the day it became due, refused payment, and declared that it never would be paid. The drawer had become bankrupt. The indorser immediately gave personal notice to the drawer. Assignees were thereafter, and on the same day, appointed for the bankrupt, and the assignees objected to the allowance of the claim against the drawer, on the ground that he had been discharged because the notice of dishonor was premature. Lord Chancellor Eldon said: " I do not recollect any decision, that, if an acceptor declares at eleven o'clock in the morning, that he will not pay, notice of that to the drawer is not good. If the law does not impose on the holder the duty of inquiring again before five o'clock, it would be extraordinary, that this information to the drawer of an answer, precluding any hope of obtaining anything by calling again, should not have effect. If a banker says, he will not accept, I cannot imagine, that the holder is obliged to apply again at ten minutes before five." Now, there is nothing in that decision, or in the words of the Lord Chancellor militating against the contention of the defendant here. The bill of exchange in that case does not appear to have been made payable at a bank. Lord Eldon's reference to a banker is by way of illustration only; and probably he refers to a banker who refuses to honor a check when it is presented. Of course the check can be protested and an

County Court, Monroe County, March, 1900.        [Vol. 31.

action commenced immediately against the drawer on behalf of the holder.

The language of Mr. Justice Story in Mills v. Bank of United States, 11 Wheat. 431, would seem to indicate that in the opinion of that learned jurist, the parties to a note made payable at a bank are bound by the usage of that bank, as to the time given to the maker of the note to pay the same, without having the note go to protest.

My conclusion is that the maker of this note in suit was allowed, by commercial usage, until four o'clock to deposit, at the Central Bank, the money necessary to cover the note; and such deposit having been made fifteen minutes before four o'clock, the maker is not in default. Although demand for the payment of the note was previously made, and the note protested for nonpayment, the protest became of no avail on deposit of the amount of the note and interest, and the maker cannot be compelled to pay the protest fees thus incurred. I think this should be held to be the rule, whether we regard the protest of the note earlier in the day as wholly bad or conditionally good — good on condition that the maker did not, before the close of banking hours, fulfill his engagement by making his account good at the bank where the note was payable. In Daniels on Negotiable Instruments, section 1036, it is said: " It would seem that in these cases of notice of dishonor given on the day on which the bill is payable, the notice will be good or bad, as the acceptor may or may not afterwards pay the bill. If he does not afterwards pay it on that day, the notice is good; and if he does, it, of course, comes to nothing."

· I think the Municipal Court should have rendered judgment against the defendant for the amount of the note, with interest to the day of its maturity only; and that the judgment appealed from is excessive, in so far as it adjudges defendant liable for interest after the maturity of the note, or protest fees or costs of the action.

The judgment appealed from is, therefore, modified so that plaintiff shall recover of the defendant thirty-nine dollars and fifty-nine cents damages, as of May 5, 1899, and no more; and by striking out the allowance for costs, nine dollars and ninety cents. The defendant, appellant, is allowed on this appeal ten dollars costs, besides disbursements.

Judgment modified, with ten dollars costs to appellant.